# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ERIK MISHIYEV,

Plaintiff,

v.

UMG RECORDINGS, INC.;
SONY MUSIC ENTERTAINMENT;
THE ORCHARD MUSIC;
YT ROCKET;
INGROVEES;
ODMEDIA NETWORK; and
VIOLENT MUSIC BV,

Defendants.

_____/

Case No.: 8:23cv1942 MSS-UAM

AUG 28 2023 PM2:48
FILED - USDC - FLMD - TPA

## INTRODUCTION

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev") and sues the Defendants, UMG RECORDINGS, INC, SONY MUSIC ENTERTAINMENT, THE ORCHARD MUSIC, YT ROCKET, INGROVEES, ODMEDIA NETWORK, VIOLENT MUSIC BV, jointly and severally, for damages and other relief and as grounds therefore, aver as follows:

## COMPLAINT AND JURY TRIAL DEMANDED

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev") and says as follows:

## PARTIES

1. Plaintiff, **ERIK MISHIYEV** (the "Plaintiff" or "Mr. Mishiyev") is an individual and is a resident of the State of Florida, in Hillsborough County

2. Defendant, **UMG RECORDINGS, INC.** ("Universal") is an American global music corporation organized under Delaware law, with its principal place of business and global corporate headquarters located in Santa Monica, California. It is also known as and does



business interchangeably as "UMG" and "Universal Music Group." UMG also maintains U.S. headquarters at 1755 Broadway, New York, New York. On information and belief, UMG Recordings, Inc. is the entity responsible for the conduct described herein and is the proper Defendant in this action. If discovery demonstrates Case 1:23-cv-00015 Document 1 Filed 01/04/23 Page 4 of 21 5 that there are other UMG entities that are also responsible and/or liable for the conduct challenged in this litigation, Plaintiffs will amend their complaint and name those additional entities as defendants in this action. 13. Universal uses the trade names "UMG" and "Universal Music Group" for its various corporate music-based operations. It is also the successor-in-interest to several other companies and/or brands within the Universal Music Group, including Polygram, Chrysalis, A & M, Capitol, EMI, Motown, Def Jam, Geffen, and the other companies which UMG/Universal Music Group succeeded by merger, acquisition, business combination, restructuring, or operation of law.

3. Defendant, **SONY MUSIC ENTERTAINMENT** ("SME") is a Delaware general partnership, the partners of which are citizens of New York and Delaware. SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York, and it has substantial business operations in the state of Florida.

4. Defendant, **THE ORCHARD MUSIC** ("The Orchard") is a New York corporation and has a principal place of business as New York, New York and is a subsidiary of Sony Music and specializes in media distribution

5. Defendant, **YT ROCKET** ("YT") is a country of Colombia company and has a principal place of business as Medellin, Colombia and specializes in promotion and distribution of musical artists.

6. Defendant, **INGROOVES** ("INgrooves") is a California corporation and has a principal place of business as San Francisco, California and as of 2008, Universal Music Group has utilized INgrovees' parent company, to digitally distribute all of its music in North America. INgrovees distributes music for artists and independent record labels.

7. Defendant, **ODMEDIA NETWORK** ("ODmedia") is a privately held company and has a principal place of business in the Netherlands and provides services such as media

processing, playout services, aggregation services, content promotion and monetization and more, thereby helping in connecting content owners and platforms to deliver content to viewers on any screen around the world and offering services that cover the entire video content lifecycle from the creation of a digital cinema package to the technical delivery to OTT platforms and broadcasters.

8. Defendant, **VIOLENT MUSIC BV** ("Violent Music") is a is a privately held company and has a principal place of business in the Netherlands and distributes music for artists and independent record labels.

9. Collectively all Defendants will be referred to as the "Defendants".

## SUBJECT MATTER JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 as federal questions are presented.

11. Plaintiffs' claims arise under the Copyright Act (17 U.S.C. §§ 101 et seq.), and this Court has jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338.

12. Venue is properly found in this District pursuant to 28 U.S.C. §1391(b), in that all parties reside, and plaintiffs' claims arose, within the District.

13. The Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. §1367(a).

## STATEMENT OF FACTS

14. This action arises out of a series of fraudulent Digital Millennium Copyright Act ("DMCA") takedown notices provided to YouTube by the Defendants for content that includes Plaintiff's logos, face, voice and copyrighted original music he produced. This resulted in Plaintiff's YouTube channel to be terminated and him losing all his hard work.

15. As discussed herein, the Defendants were able to do this because of a loophole in YouTube's DMCA counter notification process, which allows any person to claim to be representing any rights holder in the world for purposes of issuing a DMCA takedown.

16. As far as You Tube is concerned, any person, anywhere in the world, can issue a takedown notice on behalf of any rights holder, anywhere. This could even be done by a jealous or envious competitor who also has a YouTube channel. In doing this they are totally aware that this will harm you financially and can ruin your livelihood, especially if YouTube is

your only source of income. YouTube is the biggest and best platform for self-employed independent artists and musicians to get exposure while having the ability to sell their products and earn AD revenue for their YouTube views and subscribers, there's nothing else like it out there.

17. The Plaintiff was one of the first DJs on YouTube and became well-known in the NY, Miami, Tampa and Los Angeles nightlife circuits. He created and operated 2 YouTube channel(s) that as of 2019 had over 250,00 subscribers. The Plaintiff was known as "DJ Short-E" and The Short-E Show. YouTube is a video-sharing site where billions of internet users post and watch videos. Plaintiff spent 10 years building up his YouTube channel beginning in 2008. Users can monetize their channels, while making a good living from Google's AdSense program which places advertisements on a user's videos and channels. The more views your videos receive, the more AD revenue your channel makes you. Payments are disbursed monthly and fluctuate based on how popular your old and new videos become.

18.     YouTube channels operate much like television channels, with each individual channel, being able to develop its own content, interact with users and seek out and gain subscribers, who are then notified each time that channel creates new videos.

19.     The Plaintiff was one of the early users of YouTube as early as 2008 when he was contacted directly by a Google/YouTube employee named Mathew Villacarte who offered Mr. Mishiyev one of the very first YouTube "Show deals".

20.     In 2007, YouTube was still a very new platform. It has since that time become extremely popular and there are no real alternatives that deliver the same platform.

21.     The number of subscribers that a YouTube channel has is a highly sought after goal and in the early part of 2017 the Plaintiff received a congratulatory letter from the then CEO of YouTube, commemorating his channel reaching 100,000 subscribers and stating, "No one can take this away from you". **See Composite Exhibit "A"**

22.     Tens of thousands of YouTubers posted and continue to post the same type of content exactly like the Plaintiff did without having their videos taken down by Defendants. Plaintiff argues that any material in question is covered by the Fair Use doctrine which is an option even YouTube allows users to pick as a defense to any copyright claims.

23. Prior to his channels being sabotaged by Defendants, Mr. Mishiyev's channels has over 100 million views and earned over $310,000 from his video(s) AD revenue from YouTube. Due to the actions of the Defendant, the Plaintiff lost his income, his reputation was defamed, his credit score was ruined, and he was forced to file Chapter 7 Bankruptcy just 2 years later in 2021 after Defendants caused his channels to be terminated on YouTube.

24. Specifically, a procedure that states Defendants who took down these videos must show YouTube that they have taken court action against Mr. Mishiyev within 10-14 days of taking down his videos. They did no such thing and have broken the law. Mr. Mishiyev sent counter-notifications for the videos in question and emailed to the Defendants numerous times, but they did not respond, or their E-mail box continues to be full. **See composite Exhibit "B"**

25. It is known that companies and competitors put frivolous copyright claims on popular videos to try and steal ad earnings and to stifle competition and to stop any momentum the video has by taking it down which causes a Youtuber to get a strike on their channel. After three strikes the channel gets taken down. YouTube allows users to file a dispute and if no court action is taken the videos must go back online and the strike should then be removed. **See composite Exhibit "C"**

26. Universal is the largest record label in the world. In Universal's standardized recording contract, artists assign the copyright in their sound recordings to Universal in exchange for royalty payments. Universal then markets and distributes these recordings and is contractually required to account to its artists for royalties owed. Universal also monitors the internet for content posted from their artists which they believe violates copyright laws.

27. Universal has routinely targeted Plaintiff with what are called "takedown notices" but allows countless other YouTube users the ability to post the same type of content without penalty. Plaintiff had over 500 videos that had nothing to do with Defendants on his YouTube channel and lost them all as a result of these Defendants unlawful actions.

28. SME is one of the world's largest music entertainment companies. Both directly and through its affiliated companies and record labels SME produces, manufactures, distributes, markets, sells and licenses some of the most iconic and popular sound records of all al time, as well as many of today's biggest hits. SME also monitors the internet for content posted from their artists which they believe violates copyright laws.

29. SME also has routinely made what are called strikes against the Plaintiff's YouTube channel for the same type of content that other YouTube creators routinely post.
30. UMG, SONY, THE ORCHARD MUSIC, YT ROCKET, INGROOVES, ODMEDIA NETWORK and VIOLENT MUSIC BV have routinely made what are called strikes against the Plaintiff's YouTube channel for the same type of content that other YouTube creators routinely post.
31. These strikes are based on allegations that the content that the Plaintiff has posted somehow violates copyright laws.
32. These strikes are false and in reality, nothing that was posted on the Plaintiff's YouTube channel falls outside of the "Fair Use" doctrine of the copyright laws.
33. Plaintiff alleges he is not able to effectively defend against these particular claims, if proper procedure is not taken by Defendants or they stonewall attempts by Plaintiff, one can ultimately have their YouTube(s) channel banned and removed, without the ability to create new ones, which causes tremendous financial and reputable harm.
34. Plaintiff has never been sued for copyright and never lost a copyright claim dispute and always has his videos reinstated if something like this happened in the past. Defendants failed to release their claims and did not take court action. **See composite Exhibit "D"**
35. Under the DMCA takedown policy, copyright owners may file a notice with participating service providers to have allegedly infringing materials removed from a service provider's website. In exchange, the service provider is immune from the liability of its users' potentially infringing actions. The notice must include specific information, including a statement made under penalty of perjury that the copyright owner is not filing a fraudulent take-down notice. The penalties for misrepresentation can include actual damages and attorney's fees.
36. Specifically, 17 U.S. Code § 512 (f) ("Section 512 (f)") of the DMCA states that
Any person who knowingly materially misrepresents under this section—
(1) that material or activity is infringing, or
(2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider

Case 8:23-cv-01942-MSS-UAM   Document 1   Filed 08/28/23   Page 7 of 10 PageID 7

relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

37. Collectively, the Defendants have violated Section 512 (f) by repeatedly filing false DMCA takedown notices against the Plaintiff.
38. The manner in which a Plaintiff can prove damages under the DMCA is set forth below:

The Digital Millennium Copyright Act ("DMCA") provides that a service provider, such as Google, may avoid liability for storing infringing content if the service provider expeditiously removes or disables access to the content after receiving a takedown notice from the copyright holder. 17 U.S.C. § 512(c)(1)(C); Lenz v. Universal Music Corp., 815 F.3d 1145, 1151 (9th Cir. 2016). The copyright holder must have "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).

Relevant to this action, the DMCA provides that a copyright holder may be subject to liability for misuse of the takedown procedure. In particular, "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages." 17 U.S.C. § 512(f). The damages are recoverable when they are "incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]" Id.

In this case, even assuming that the Complaint plausibly alleges a knowing and material misrepresentation, the Complaint does not allege that the service provider — which is not identified in the Complaint — "remov[ed] or disabl[ed] access" to the allegedly infringing material. 17 U.S.C. § 512(f). Absent some indication that a "takedown" actually occurred, Plaintiffs fail to allege the requisite injury under Section 512(f), and thus fail to state a plausible claim under the DMCA. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 704-05 (D. Md. 2011); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1028-29 (N.D. Cal. 2011); *cf. Lenz*, 815 F.3d at 1149-50, 1156 (where a takedown occurred, holding that the alleged infringer could recover nominal damages).

7

*Opinion Corp. v. Roca Labs, Inc.*, Case No. 8:15-CV-811-17AEP (M.D. Fla. 2016)

39. Attached as **Composite Exhibit "B"** are E-mails showing communications from YouTube to the Plaintiff, including the video IDs in question that need to be resolved w/ Defendants.

## COUNT I – ALL DEFENDANTS
## (MISREPRESENTATION UNDER 17 U.S.C. § 512(F))

40. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.
41. The takedown notices in this matter were presented by the Defendants as being based on materials on the Plaintiff's YouTube channel that infringed upon copyright owned by the Defendants and/or for artists that were represented by the Defendants.
42. The takedown notices contained misrepresentations that material or activity was infringing.
43. According to information and belief, Defendants knew at the time they sent the takedown notices that the representations in the takedown notices that material or activity was infringing were false.
44. The misrepresentations contained in the takedown notices were material to YouTube's decision to remove or disable Plaintiff's channel.
45. Plaintiff suffered damages as a result of YouTube's relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing.

**WHEREFORE**, Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and for costs and attorneys' fees pursuant to 17 U.S.C. § 512(f), an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

## COUNT II – ALL DEFENDANTS
## (INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS)

46. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.
47. As a result of the operation of his business, Plaintiff has a business relationship with the Defendants.
48. The actions of Defendants as previously described constitute a knowing intentional and unjustified interference with his business relationships.

49. As a proximate cause and result of the unlawful actions of Defendants, Plaintiff has suffered damages, including loss of income, loss of profits, and loss of business good will and business relationships.
50. Plaintiff has employed counsel to represent him in this litigation and has agreed to pay counsel a reasonable fee for any and all such services.
51. Plaintiff is entitled to attorney's fees from Defendants.

**WHEREFORE**, Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

### COUNT III – ALL DEFENDANTS
### (VIOLATIONS OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, CHAPTER 501, PART II, FLORIDA STATUTES)

52. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.
53. Pursuant to § 501.204 (1), Florida Statutes, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
54. As set forth in the above paragraphs, Defendants have engaged in a pattern of misinformation, deception and unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce with regards to the lease agreement and the failure to make repairs to the Property.
55. Pursuant to § 501.211 (1), Florida Statutes, "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."
56. Furthermore, pursuant to § 501.211 (2), Florida Statutes, "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

57. Defendants have willfully engaged in the acts and practices as outlined in the above paragraphs, when they knew or should have known that such acts and practices were unfair and deceptive or otherwise prohibited by law.
58. These above-described acts and practices of the Defendants have injured and will likely continue to injure and prejudice the Plaintiff.
59. Unless the Defendants are temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, the Defendant's actions will result in irreparable injury to the Plaintiff for which there is no adequate remedy at law.
60. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially in excess of $1,000,000.00, which include, *inter alia*, direct and consequential damages, extra expenses, loss of profits, attorney's fees and damages.

**WHEREFORE**, Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues within this Complaint.

RESPECTFULLY SUBMITTED this 28th day of August 2023.

By: _[signature]_

Plaintiff, ERIK MISHIYEV
5000 CULBREATH KEY WAY APT 1-317
TAMPA, FL 33611