**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ERIK MISHIYEV,**

    Plaintiff,

**v.**                                        **Case No:** 8:23-cv-1942-MSS-NHA

**UMG RECORDINGS, INC., et al.,**

    Defendants.

_____

## <u>PLAINTIFFS THIRD AMENDED COMPLAINT WITH JURY TRIAL DEMANDED</u>

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev") respectfully submits his third and hopefully final Amended Complaint and respectfully requests this court to grant a judgment in favor of the Plaintiff who is in need of immediate compensatory/monetary relief for the harms and injuries he has incurred due to the Defendants malicious and fraudulent misrepresentation of the count herein. On its face this complaint clearly withstands the test, and the allegations are in fact <u>not</u> time barred with plenty of circumstantial evidence to support Plaintiff including an affidavit and confession video this court can watch that shows Defendants associates admitting wrong doings acting as mob bosses and "hit men" for Defendants.  Quote "I'm the big boss man, the reason DJ Short-e ain't made it for 20 years" This ***confession video*** will prove an unlawful scheme set out by Defendants associates to harm Plaintiff: www.youtube.com/watch?v=5_i456JBhjc

1

## **SUMMARY**

Plaintiff was a very popular DJ that has endured a tremendous amount of anti-competitive and unlawful conduct over the years from corrupt individuals and entities, including these Defendants and some of the artists and DJs they are associated with in Tampa, Orland, Miami and beyond. The Defendants violated the DMCA and used misrepresentation as a **WEAPON** to cause Plaintiff severe harm. A discovery process will prove they did this on purpose with <u>malicious intent</u> to stop his fan growth, to stop his YouTube income, to stifle his from appearing to be relevant, to stop him from competing fairly, specifically against the DJ's signed to their labels and local Artists/On-Air DJ's who play their music and have financial ties with them. Plaintiff is an independent artist/DJ that is not associated with the Defendants or people who they conspired with like ***DJ Khaled or Arlandal Davis or Kevin Ratliff*** (who do business with Defendants for decades and have harassed Plaintiff). **(See Exhibit D)**

These Defendants have financials ties/stakes with Plaintiffs local and nation rivals and have been influenced with bribes in a conspiracy and scheme to sabotage the Plaintiffs ability to contract or make a living as he once did. Furthermore, Fair Use Laws, procedures and requirements were completely ignored and stonewalled when Defendants failed to respond to Plaintiff's Counter Notifications, they received several times over the years and as recently as 2022, 2023 and 2024. Defendants continue to not cooperate with Plaintiff. Mr. Mishiyev A/K/A/ DJ Short-e also alleges that there is

evidence of Political Bias and Defendants and their associates targeted him because he was a conservative and posted Pro-Trump content and **there is evidence Defendants and their associates do not like Republicans and blackball and harm those that do.** Plaintiff was highly respected in Tampa, FL at one time. **(See Exhibit E)**

## PARTIES

1. Plaintiff, **ERIK MISHIYEV** (the "Plaintiff" or "Mr. Mishiyev") is an individual and is a resident of the State of Florida, in Hillsborough County

2. Defendant, **UMG RECORDINGS, INC.** ("Universal") is an American global music corporation organized under Delaware law, with its principal place of business and global corporate headquarters located in Santa Monica, California. It is also known as and does business interchangeably as "UMG" and "Universal Music Group." UMG also maintains U.S. headquarters at 1755 Broadway, New York, New York. On information and belief, UMG Recordings, Inc. is the entity responsible for the conduct described herein and is the proper Defendant in this action. If discovery demonstrates Case 1:23-cv-00015 Document 1 Filed 01/04/23 Page 4 of 21 5 that there are other UMG entities that are also responsible and/or liable for the conduct challenged in this litigation, Plaintiffs will amend their complaint and name those additional entities as defendants in this action. 13. Universal uses the trade names "UMG" and "Universal Music Group" for its various corporate music-based operations. It is also the successor-

in-interest to several other companies and/or brands within the Universal Music Group, including Polygram, Chrysalis, A & M, Capitol, EMI, Motown, Def Jam, Geffen, and the other companies which UMG/Universal Music Group succeeded by merger, acquisition, business combination, restructuring, or operation of law.

3. Defendant, **SONY MUSIC ENTERTAINMENT** ("SME") is a Delaware general partnership, the partners of which are citizens of New York and Delaware.  SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York, and it has substantial business operations in the state of Florida.

4. Defendant, **THE ORCHARD MUSIC** ("The Orchard") is a New York corporation and has a principal place of business as New York, New York and is a subsidiary of Sony Music and specializes in media distribution.

5. Defendant, **YT ROCKET** ("YT") is a Colorado corporation and has a principal place of business as Medellin, Colorado and specializes in promotion and distribution of musical artists.

6. Defendant, **INGROVEES** ("Ingrovees") is a California corporation and has a principal place of business as San Francisco, California and as of 2008, Universal Music Group has utilized Ingrovees' parent company, to digitally

distribute all of its music in North America. Ingrovees distributes music for artists and independent record labels.

7. Defendant, **ODMEDIA NETWORK** ("Odmedia") is a privately held company and has a principal place of business in the Netherlands and provides services such as media processing, playout services, aggregation services, content promotion and monetization and more, thereby helping in connecting content owners and platforms to deliver content to viewers on any screen around the world and offering services that cover the entire video content lifecycle from the creation of a digital cinema package to the technical delivery to OTT platforms and broadcasters.

8. Defendant, **VIOLENT MUSIC BV** ("Violent Music") is a is a privately held company and has a principal place of business in the Netherlands and distributes music for artists and independent record labels.

9. Collectively all Defendants will be referred to as the "Defendants".

## **SUBJECT MATTER JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 as federal questions are presented.

11. Plaintiffs' claims arise under the Copyright Act (17 U.S.C. §§ 101 et seq.), and this Court has jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338.

12. Venue is properly found in this District pursuant to 28 U.S.C. §1391(b), in that all parties reside, and plaintiffs' claims arose, within the district.

13. The Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. §1367(a).

## STATEMENT OF FACTS

14. Plaintiff recently discovered a plot and scheme that was intended to harm his credibility, reputation and livelihood. Defendants used anti-competitive conduct in the form of misrepresenting Copyright claims fraudulently and took down his YouTube videos to stifle the Plaintiff from earning money or becoming a popular DJ as he once was. This is being done <u>maliciously</u> by Defendants associates who play their music on the radio in Tampa and Miami  have been <u>targeting</u> him for nearly 20 years and this is all connected in a sworn affidavit supplied by Eric Green who had a 5013c non-profit afterschool program that helped the inner city youth. Plaintiff has supplied an **affidavit in support of Plaintiffs** allegations and story at the end of this complaint. **(See Exhibit H)**

15. If Plaintiff's could have taken court action against Plaintiff to prove any copyright claims they made, but they failed to do so. Plaintiff alleges these claims are being placed on his videos out of spite and a retaliation influenced by DJ Khaled and other local radio DJ's in Tampa Bay and Miami in order to prevent Plaintiff from being famous on YouTube as he once was so he cannot

take the spotlight from the DJ's associated with Defendants so they used Fraudulent Copyright Misrepresentation as a weapon to stop Plaintiff's income.

16. Plaintiff demonstrates himself Covering local and national events, interviewing celebrities, performing original tracks, DJing in clubs, Djing in his apartment, sometimes live sometimes pre-recorded, just like Defendants DJ's they are associated with who are competitors and rivals on YouTube and in general.

17. Plaintiff states he owns and created all the videos mentioned in the complaints and Defendants have stolen them and held them hostage by ignoring emails and counter notices that they received from Plaintiff. The Defendants did this maliciously and on purpose because they knew without their cooperation, Plaintiff's YouTube channels would eventually be terminated for failing to resolve the copyright disputes that were fraudulently placed on his videos.

18. All the videos uploaded to YouTube by Plaintiff are transformative videos that include Plaintiff's face, voice, logos, original works and more. The videos vary and are 30, 60, 120 minutes in length and in no way shape or form resemble any original works created by Defendants.

19. Plaintiff has several new and old channels that are being affected from 2008-2024. Defendants counsel stated to Plaintiff her clients never got any counter notices, so Plaintiff sent their counsel another counter notice on 01/28/2024 even

though there is plenty of evidence Plaintiff has sent claimants many emails/notices over the years. **(See Exhibit A)**

20. Plaintiff alleges he was and is still being targeted and sabotaged by the DJ's affiliated or signed to the Defendants record labels so he could not fairly compete against them as Plaintiff was on his way to becoming a big YouTube star before Defendants' malicious actions caused him to lose his job. Plaintiff alleges the Defendants are using their wealth and influence to put Mishiyev out of business so he cannot fairly compete against them or their associates. **See Plaintiff state court suit. (Mishiyev vs. DJ Khaled Case No. 23-CA-017047) where Mishiyev has filed a tremendous amount of evidence.**

21. There is <u>no statute of limitations</u> that prevent Plaintiff from sending a copyright counter notice to the Defendants. A counter notice can be sent at any time as many times as necessary for any videos, old or new, in order to try and resolve a copyright dispute, especially when dealing with videos that appear to be protected by FAIR USE.

22. Plaintiff filed a lawsuit after he discovered what is happening to him, as this is not something he has experienced before, again Mr. Mishiyev has never been sued for copyright infringement and has a great history on YouTube, up until this all started happening to him.

23. It is alleged that the Defendants have engaged in violations of 17 U.S.C. of 42 U.S.C. §512, which is the Digital Millennium Copyright Act (the "DMCA").

24. Defendants defaulted on <u>02/11/2024</u> when they failed to comply within the 10 days allowed by law to show they took court action against Plaintiff to keep videos down.

25. According to YouTube policies found on their website: Quote, "The claimant has **10 US business days**, as required by copyright law, to respond to the counter notification. They must respond with evidence of legal action taken to keep your content from being reinstated to YouTube." Link: <u>Submit a copyright counter notification – YouTube Help (google.com)</u>

26. Videos like these are created by DJ's all over the world and found all over YouTube and are 1st presumed to be protected by <u>Fair Use</u> and court action must be taken to prove otherwise.

27. Plaintiff started new YouTube channels to see if he was being <u>targeted</u> by the same Defendants, and he believes this to be the case.

28. The plaintiff re-uploaded the same videos mentioned in the amended complaint and other new videos to a new channel he created in **January 2024** to demonstrate and prove that ALL Defendants are specifically stalking and targeting him from making any sort of comeback on YouTube. Mishiyev

received another video <u>takedown notice</u> from YouTube because of the unlawful fraudulent actions of the Defendants as recently as <u>02/28/2024</u> **(See Exhibit B)**

29. The plaintiff has never been sued for copyright infringement before on YouTube or anywhere for that matter, but the tort and daily losses continue to this day <u>12/20/2024.</u>

30. In another copyright case, Universal argued that due to the fact-intensive analysis of "fair use," such analysis was not required. However, the Ninth Circuit stated that, because the **<u>"fair use" doctrine is codified in the U.S. Copyright Act, "[f]air use is not just excused by the law, it is wholly authorized by the law."</u>** It found that claimants or service providers like Universal could not shirk their responsibilities to at least consider whether a potential infringement was, in fact, authorized under U.S. Copyright Law.

31. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially more **than <u>$10,000,000</u>** which include, *inter alia*, direct, and consequential damages, extra expenses, loss of profits, attorney fees and damages.

### COUNT I – ALL DEFENDANTS<br>(MISREPRESENTATION UNDER 17 U.S.C. § 512(F))

32. The plaintiff sets forth the following facts in support of this cause of action.

33. This action arises out of a series of fraudulent Digital Millennium Copyright Act ("DMCA") claims, disputes and takedown notices provided to YouTube by ALL the Defendants from 2014-2024 in an ongoing campaign to stifle Plaintiff from competing and becoming more popular than them.

34. As discussed herein, the Defendants were able to do this because of a hole in YouTubes's DMCA process, which allows any person to claim to be representing any rights holder in the world for purposes of issuing a DMCA claim or takedown, but this should not be permitted for vindictive reasons, like to stifle competition, without any consequences.

35. As far as You Tube is concerned, any person, anywhere in the world, can issue a takedown notice on behalf of any rights holder, anywhere.  This could be done by a competitive rival DJ, Recording Artists, Record Label, or any other content producer with malicious plans.

36. The Plaintiff was one of the most highly successful music DJs in Tampa Bay, Orlando, Miami, New York and Los Angeles markets and operated **multiple YouTube channels** from 2008-2021 that had a combined total of over 250,00+ Subscribers.  The Plaintiff was known as "DJ Short-E". Plaintiff was rewarded with a YouTube award and spent 10 hard years creating content and investing in his YouTube channel(s). Users can monetize their channels, while making a good living from Google's AdSense program which places advertisements on

user's videos and channels. The more video views and ad clicks, the more ad revenue a content creator can make. Plaintiff tried launching new channels.

37. On 10/24/2022 Defendants and their associates contacted YouTube and influenced their decision making once again. Shortly after he was notified his 2nd biggest YouTube channel was terminated, see channel link:

https://www.youtube.com/channel/UCJpLM4bE48AzbmygBUcGVwQ

38. At the time that the Plaintiff's YouTube channel was canceled, he had accumulated over 100 million views and earned over $310,000 from YouTube but could have been earning that much every year if Defendants did not continue to violate the DMCA. Due to the actions of the Defendants, the Plaintiff lost his income and was forced to file bankruptcy and has not been able to regain the success he once had prior to this misrepresentation.

39. The plaintiff has never been sued for copyright and never lost a copyright dispute. Defendants and YouTube did not follow their own terms and conditions and DMCA copyright policies and for some reason are not respecting the Plaintiff's valid counter notifications.

40. These strikes are false and in reality, nothing that was posted on the Plaintiff's YouTube channel falls outside of the "Fair Use" doctrine of the copyright laws. The strikes are sent under the Digital Millennium Copyright Act as what is

called a DMCA takedown and these DMCA takedowns are sent to an individual such as the Plaintiff.

41. Under the DMCA takedown policy, copyright owners may file a notice with participating service providers to have allegedly infringing materials removed from a service provider's website.  In exchange, the service provider is immune from the liability of its users' potentially infringing actions. The notice must include specific information, including a statement made under penalty of perjury that the copyright owner is not filing a fraudulent take-down notice.  The penalties for misrepresentation can include actual damages and attorney's fees.

42. Specifically, 17 U.S. Code § 512 (f) ("Section 512 (f)") of the DMCA states that Any person who knowingly materially misrepresents under this section—

**(1)** that material or activity is infringing, or

**(2)** that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

43. Collectively, the Defendants have violated Section 512 (f) by repeatedly filing false DMCA claims and takedown notices against the Plaintiff.

44. The way a Plaintiff can prove damages under the DMCA is set forth below:

*The Digital Millennium Copyright Act ("DMCA") provides that a service provider, such as Google, may avoid liability for storing infringing content if the service provider expeditiously removes or disables access to the content after receiving a takedown notice from the copyright holder. 17 U.S.C. § 512(c)(1)(C); Lenz v. Universal Music Corp., 815 F.3d 1145, 1151 (9th Cir. 2016). The copyright holder must have "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).*

45. In this case the Complaint plausibly alleges a knowing and material misrepresentation, the Complaint alleges that the service provider instructed Plaintiff to handle this dispute with the Defendants directly. (See Exhibit evidence) YouTube was instructed by Defendants and influenced their decision making unlawful to "remov[ed] or disabl[ed] access" to the allegedly infringing material. 17 U.S.C. § 512(f). The takedowns all occurred by Defendants within 10 business days of a copyright claim being made. Because of these false claims, disputes and takedowns, strikes were issued to Mishiyev and as a result his YouTube channels were taken down and he cannot log back in to manage his

14

other videos, channels or get more details.

46. The takedown notices in this matter were presented by the Defendants as being based on materials on the Plaintiff's YouTube channel that infringed upon copyright owned by the Defendants and/or for artists that were represented by the Defendants.

47. The takedown notices contained misrepresentations that material or activity was infringing.

48. According to information and belief, Defendants knew at the time they sent the takedown notices that the representations in the takedown notices that material or activity was infringing were false.

49. The misrepresentations contained in the takedown notices were material and triggered YouTube's decision to remove or disable Plaintiff's channels.

50. Plaintiff suffered damages within statute of limitations for his 2nd biggest YouTube channel starting in October 2022 when that too was terminated and taken down. **(See Exhibit C)**

*"Misrepresentation in removing or disabling access to the material or activity claimed to be infringing. Relevant to this action, the DMCA provides that a copyright holder may be subject to liability for misuse of the takedown procedure. In particular, "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . .*

*shall be liable for any damages." 17 U.S.C. § 512(f). The damages are recoverable when they are "incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]"*

51. At the time that the Plaintiff's YouTube channels were canceled, he had accumulated over 110+ million views and earned over $310,000 with an average of $65,000 per year on YouTube, up until Defendants actions stopped his income and severely harmed his livelihood. Due to the actions of the Defendants, the Plaintiff lost his income, his reputation was defamed, his credit score was ruined, and he was placed in an ongoing hardship.

52. Plaintiff has never been sued for copyright and never lost a copyright dispute. YouTube did not follow their own terms and conditions and copyright policies and for the first time ever didn't send Plaintiff's counter notifications to claimants so he could defend himself against these frivolous claims, this all started happening the day after they notified Plaintiff that they were taking down his channels, which seemed to be a retaliation of some sort to his litigation threat.

53. It is known that people put frivolous copyright claims on popular videos to try and steal ad earnings and to stifle competition and to stop any momentum the

video has by taking it down which causes a Youtuber to get a strike on their channel.

54. Defendants have routinely made what are called strikes against Plaintiff's YouTube channel for the same type of content that other YouTube creators routinely post.

55. Defendants are some of the world's largest music entertainment companies. Both directly and through its affiliated companies and record labels SME produces, manufactures, distributes, markets, sells and licenses some of the most iconic and popular sound records of all time, as well as many of today's biggest hits. SME also monitors the internet for content posted from their artists which they believe violates copyright laws.

56. These strikes are based on allegations that the content that the Plaintiff has posted somehow violates copyright laws. These strikes are false and in reality, nothing that was posted on the Plaintiff's YouTube channel falls outside of the "Fair Use" doctrine of the copyright laws.

57. The strikes are sent under the Digital Millennium Copyright Act as what is called a DMCA takedown and these DMCA takedowns are sent and an individual such as the Plaintiff is not able to effectively defend against these and ultimately can face action, such as his YouTube channel being removed.

58. These above-described acts and practices of the Defendants have injured and will likely continue to injure the Plaintiff.

59. Unless the Defendants are temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, the Defendant's actions will continue to severely harm and irreparably injure the Plaintiff for which there is no adequate remedy at law.

60. The Plaintiff now has plausibly stated an alleged claim(s) for misrepresentation under Section 512(f) of the Copyright Act.

61. Defendants have continued to harm and harass Plaintiff in emails found from 2022, 2023 and into 2024 by targeting Plaintiff and sending false claims and [Digital Millenium Copyright Act ("DMCA")] takedown notices and continue to ignore Plaintiff's copyright counter-notifications, arrogantly and spitefully, to hurt the Plaintiffs livelihood and Platforms like YouTube and others.

62. The Plaintiff has should have been a huge star in the music industry but instead Plaintiff has suffered injury or damage of approximately **$10,000,000** not only for the videos below but also for 500+ other videos that were harmed and are no longer able to be monetized by Plaintiff on account of Defendants' actions and sets forth the basis of such injury or damage arising after December 14, 2020, the Supreme Court also allows for monetary relief for fraudulent copyright infringement for damages outside of the statutes of limitations.

63. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.

64. The acts of Defendants described herein constitutes outrageous conduct against Mr. Mishiyev. These acts terrorized Mr. Mishiyev and were intended to cause Plaintiffs to suffer emotional distress, or, alternatively, Defendants engaged in the conduct with reckless disregard of the high probability of causing Mr. Mishiyev to suffer emotional distress even though his original count for this is pre-empted Plaintiff feels excruciating distress from this.

65. Mr. Mishiyev continues to suffer severe emotional distress every day and is requesting monetary relief so he can try to recover and get some stability back in his life as he once had prior to all of this malicious activity.

66. The Plaintiff has witnesses on the inside who are willing to testify and give a deposition. For example, "Allison Gordon" who worked with Defendants radio station WiLD 94.1FM and was associated with Defendants by playing their music, worked for WiLD 94.1FM in Tampa for 18 years and she has given Plaintiff crucial information about this scheme to harm the Plaintiff! "Almost everyone who worked there witnessed him vowing to ruin you, there are plenty witnesses your attorney can call" She stated this again on 12/24 **(See Exhibit F)**

67. Plaintiff is the only DJ in Tampa with a YouTube award and worked hard for 10 long years to build his brand, but that has been destroyed by Defendants

beyond repair, costing Plaintiff <u>millions in lost gross revenue</u>, not only from the last 3 years, but daily and future earnings lost as well. Defendants are unlawfully ignoring the FAIR USE doctrine and all of Plaintiff's attempts to resolve this issue with his videos, as Defendants continue to harass and hold various videos, purposely to prevent Mr. Mishiyev from competing against them.

68. Plaintiff is the only DJ that is being targeted by Defendants and these associates mentioned in this complaint and a Discovery process will reveal more details. The outrageous conduct of Defendants, as set forth above, constitutes intentional infliction of emotional distress although it may not be actionable under the laws of the State of Floride because of the pre-empted Copyright count, it does not negate the fact that Plaintiff is suffering with excruciating pain and depression because of these incidents.

69. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially more than **$10,000,000** which include, *inter alia*, direct, and consequential damages, extra expenses, loss of profits, attorney fees and damages. *Some YouTube DJ's make millions of dollars per year* like Plaintiff's friend **DJ Vlad** who Mr. Mishiyev introduced to these Defendants and now has 6 million subscribers! Watch video:

HTTPS://WWW.YOUTUBE.COM/WATCH?V=F9F3N8HLGY0

70. This is how 10 million in monetary relief is justified:

**2021-2024 ACTIVE OLD/NEW CLAIMS MADE BY UMG, SONY ET AL.,**
**WITHIN STATUE OF LIMITATIONS PLUS 500+ OTHER VIDEEOS THAT**
**WERE AFFECTED THAT PLAINTIFF CAN NOT SHARE WITH THE**
**COURT BECAUSE HIS YOUTUBE WAS TERMINATED AND HE CAN**
**NOT LOG IN TO ACCESS THE LINKS.**

Each of these videos were averaging about $500-$600 per month in ad revenue
which has been sabotaged by Defendants. ***Plus 500+ other videos lost monetization***
because of this misrepresentation causing Plaintiff to lose millions of dollars in
possible revenue because of the constant sabotage he has endured with these
Defendants and the DJs signed to their Record labels and their radio associates in
Tampa and Miami, FL who have been set out to destroy Plaintiff.

http://www.youtube.com/watch?v=zIo3zNDGbY0 ($500 per month lost revenue
since 04/14/2021)

http://www.youtube.com/watch?v=4fZFa5cuIEE ($500 per month lost revenue since
04/14/2021)

http://www.youtube.com/watch?v=ngLzAoSfdP4 ($500 per month lost revenue since
04/14/2021)

http://www.youtube.com/watch?v=6H4h2UESE9w ($500 per month lost revenue
since 04/14/2021)

http://www.youtube.com/watch?v=G5NWOzNz3cY ($500 per month lost revenue
since 04/14/2021)

http://www.youtube.com/watch?v=z5bxmI59DV4 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=kDJZZCXQPR0 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=WJhM8A93Npg ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=ZCU2h3drj08 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=1nBmVV6U6DY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=thLIIFBK-jY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FE6wj7BCPj0 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=HYJRs13ODgs ($500 per month lost revenue since 10/23/202)

http://www.youtube.com/watch?v=O8qOiHu0OQ4 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FCHXlOJRxaQ ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=4B0h08aGSYM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=0ihv0V_Ldo8 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=thLIIFBK-jY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=7YkeCHNaUkM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FCHXlOJRxaQ ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=4B0h08aGSYM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=zKG_3GxlRmg ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=UGgngkA2vHw ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=IZ0cLVB9wuM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=Racu88sD7eE ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=2cAE6d0yH4I ($500 per month lost revenue since 10/23/2022)

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff respectfully demands for his financial losses to be recouped and for present and future losses, injunctive relief and for discovery to proceed and a trial by jury to address all the allegations, exhibits and issues mentioned within this Complaint. Plaintiff also requests the Honorable Judge Scriven to instruct the Defendants to explain why he is the only person in Tampa Bay that is being targeting like this? Mishiyev is being unfairly treated and is suffering from never-ending hardships because of Defendants and their associates in Florida, who are his rivals.

**WHEREFORE**, **Plaintiff, Mr. Mishiyev respectfully demands an injunction and judgment against the Defendants for compensatory damages and for lost time, lost content, costs and attorneys' fees pursuant to 17 U.S.C. § 512(f), and for <u>Punitive damages</u> and further relief as the Court may deem just and proper.**

RESPECTFULLY SUBMITTED UNDER OATH,
on this **20th** day of December 2024.

By: _Erik Mishiyev_____
Plaintiff, ERIK MISHIYEV