## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ERIK MISHIYEV,**

    Plaintiff,

**v.**                                                              **Case No:** 8:23-cv-1942-MSS-NHA

**UMG RECORDINGS, INC., et al.,**

    Defendants.

---

### PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev") files and requests for a "Motion for Summary Judgement" to be granted in favor of the Plaintiff for **10 Million Dollars plus punitive damages**. The discovery rule allows for not only damages caused within but also outside the statute of limitations. On its face this complaint, which includes an affidavit and witnesses, clearly favors Plaintiff. The allegations are in fact <u>not</u> time barred with plenty of circumstantial evidence to support Plaintiff including an affidavit and confession video this court can watch that shows Defendant's associates, who are Plaintiffs rivals, admitting to wrong doings. **(See Exhibits D below)** quote "I'm the big boss man, the reason DJ Short-e ain't made it for 20 years". This confession ***video*** proves an unlawful on-going scheme set out to harm Plaintiff by the Defendants associates who influenced their decisions, click link: www.youtube.com/watch?v=5_i456JBhjc

1

## SUMMARY JUDGEMENT ELEMENTS HAVE BEEN MET BY PLAINTIFF

1) A "plaintiff motion for summary judgment" is a request filed by the plaintiff in a lawsuit asking the court to decide the case, or a part of the case, in their favor without going to trial, based on the argument that there are no genuine disputes about the material facts and the law clearly supports their claim, meaning they are entitled to judgment as a matter of law.

2) Key points about a plaintiff motion for summary judgment:

   **"No disputed facts within the 4-year statute of limitations"**

   - The plaintiff must demonstrate that there are no significant factual disagreements between the parties that would require a trial to resolve.

   **"Evidence Used"**

   - The motion is supported by evidence like affidavits, depositions, and documents that establish the undisputed facts.

   **"Purpose"**

   -This motion aims to expedite the legal process by allowing the court to decide the case based on the existing evidence without the need for a full trial.

### When might a plaintiff file a motion for summary judgment?

- When the defendant's answer admits to all key facts of the plaintiff's claim.

2

- When there is a clear legal precedent supporting the plaintiff's case and no relevant factual disputes.

- When the plaintiff has strong documentary evidence to support their claim.

## <u>RECENT SUPREME COURT RULING 6-3 IN FAVOR OF PLAINTIFF</u>

In 2024, the Supreme Court issued its decision in the copyright-damage-focused case, *Warner Chappell Music, Inc., et al. v. Nealy et al. instead, Warner moved for summary judgement, based on a decision from the Second Circuit, arguing that, even if the infringement claim was timely, monetary relief was limited to the three-years prior to the filing of the lawsuit because of the Copyright Act's statute of limitation for damages. Therefore, there was limited damage as most of the infringement. The District Court agreed and held that monetary relief is limited solely to the three years immediately preceding the filing of the lawsuit.*

*On interlocutory appeal, the Eleventh Circuit reversed the District Court's decision holding that a plaintiff with a timely claim under the discovery rule can recover damages for copyright infringement even if the damages occurred more than three years prior to a lawsuit being filed. This created a circuit split between the Second Circuit, which limits damages to the three years immediately preceding the filing a lawsuit and the Eleventh Circuit, which followed the Ninth Circuit's lead and allows damages for infringement that happened more than three years before the filing of a*

*claim. In a 6-3 ruling, authored by Justice Kagan and joined by Chief Justice Roberts and Justices Sotomayor, Kavanaugh, Barrett, and Jackson, the Supreme Court held that the plain language of the Copyright Act's remedial section does not provide any time limit on a copyright plaintiff's monetary recovery under the discovery rule. The majority noted that if a three-year limit was placed on damages, it would essentially gut the discovery rule as it would allow plaintiffs to bring suit, but not recover damages for any infringement prior to the three years proceeding the filing of a copyright lawsuit. In jurisdictions where the discovery rule applies, there is no time limitation on the calculation and recovery of monetary damages. Thus, copyright plaintiffs in these jurisdictions have more incentive to seek out copyright infringement regardless of when it occurred given that there is no timing restriction on the recovery of damages.*

## **GENERAL ALLEGATIONS**

Plaintiff was a very popular DJ that has endured a tremendous amount of anti-competitive and unlawful conduct over the years from corrupt individuals and entities, including these Defendants and some of the artists and DJs they are associated with in Tampa, Orlando, Miami and beyond. The Defendants violated the DMCA and used misrepresentation as a **WEAPON** to cause Plaintiff severe harm. A discovery process, which defendants are desperately trying to avoid, will prove they did this on purpose with **malicious intent** to stop Plaintiff from competing against the Defendants and

their paid-off associates who they have bribed to play their music and cover up an illegal pay to pay scheme. Mr. Mishiyev was minding his own business and did not bribe them, so they sabotaged all the places he was contracted and made income from.

These Defendants have financials ties/stakes with Plaintiffs local and nation rivals and have been influenced with bribes in a conspiracy and scheme to sabotage the Plaintiffs ability to contract or make a living as he once did. Furthermore, Fair Use Laws, procedures and requirements were completely ignored and stonewalled when Defendants failed to respond to Plaintiff's Counter Notifications, they received several times over the years and as recently as 2022, 2023 and 2024 and 2025. **(Exhibit A)**

Defendants continue to not cooperate with Plaintiff. Mr. Mishiyev A/K/A/ DJ Short-e also alleges that there is evidence of Political Bias and Defendants and their associates targeted him because he was a conservative and posted Pro-Trump content and **there is evidence Defendants and their associates do not like Republicans and blackball and harm those that do.**

## <u>SUBJECT MATTER JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 as federal questions are presented.

2. Plaintiffs' claims arise under the Copyright Act (17 U.S.C. §§ 101 et seq.), and this Court has jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338.

3. Venue is properly found in this District pursuant to 28 U.S.C. §1391(b), in that all parties reside, and plaintiffs' claims arose, within the district.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. §1367(a).

## STATEMENT OF FACTS

5. Plaintiff recently discovered a plot and scheme that was intended to harm his credibility, reputation and livelihood. Defendants used anti-competitive conduct as a weapon when they misrepresented Copyright claims fraudulently and took down his YouTube videos to stifle the Plaintiff from earning money or becoming a popular DJ as he once was. This is being done maliciously by Defendants associates who play their music on the radio in Tampa and Miami and beyond, who are jealous and envious, so they all worked in a concerted effort for nearly 20 years to stop him (watch confession video on page 1). This can be corroborated by Mr. Eric Green who had a 5013c non-profit afterschool program that helped the inner-city youth. Please see Mr. Green's affidavit in support of these allegations, in this complaint as (**Exhibit F) "The Affidavit"**.

6. Defendants could have taken court action against Plaintiff to prove any copyright claims they made, but they failed to do so. Plaintiff alleges these claims are being placed on his videos out of spite and a retaliation influenced by DJ Khaled and other local radio DJ's in Tampa Bay and Miami in order to

prevent Plaintiff from being famous on YouTube as he once was and so he cannot take the spotlight from the DJ's associated with Defendants, so they cleverly but illegally used Fraudulent Copyright Misrepresentation as a weapon to stop Plaintiff's income. This is a clear example of anti-competitive conduct.

7. Plaintiff demonstrates himself Covering local and national events, interviewing celebrities, performing original tracks, DJing in clubs, Djing in his apartment, sometimes live sometimes pre-recorded, just like Defendants DJ's and associates on the radio do. There is extreme hypocrisy occurring in this case.

8. Plaintiff states he owns and created all the videos mentioned in the complaints and Defendants have stolen them and held them hostage by ignoring emails and counter notices that they received from Plaintiff. The Defendants did this maliciously and on purpose because they knew without their cooperation, Plaintiff's YouTube channels would eventually be terminated for failing to resolve the copyright disputes that were fraudulently placed on his videos.

9. Plaintiff alleges he was and is still being targeted and sabotaged by the DJ's affiliated or signed to the Defendants record labels so he could not fairly compete against them as Plaintiff was on his way to becoming a big YouTube star before Defendants' malicious actions caused him to lose his job. Plaintiff alleges the Defendants are using their wealth and influence to put Mishiyev out of business so he cannot fairly compete against them or their associates.

**See Plaintiff state court suit. (Mishiyev vs. DJ Khaled Case No. 23-CA-017047) where Mishiyev has filed a tremendous amount of evidence.**

10. There is <u>no statute of limitations</u> that prevent Plaintiff from sending a copyright counter notice to the Defendants. A counter notice can be sent at any time as many times as necessary for any videos, old or new, in order to try and resolve a copyright dispute, especially when dealing with videos that appear to be protected by FAIR USE and belong and were created by the Plaintiff.

11. Plaintiff filed a lawsuit against Defendants associated after he truly discovered what is happening to him, as this is not something he has experienced before, again Mr. Mishiyev has never been sued for copyright infringement and has a great history on YouTube, up until this all started happening to him.

12. It is alleged that the Defendants have engaged in violations of 17 U.S.C. of 42 U.S.C. §512, which is the Digital Millennium Copyright Act (the "DMCA").

13. According to YouTube policies found on their website: Quote, "The claimant has **10 US business days**, as required by copyright law, to respond to the counter notification. They must respond with evidence of legal action taken to keep your content from being reinstated to YouTube." Link: <u>Submit a copyright counter notification – YouTube Help (google.com)</u>

14. Videos like these are created by DJ's all over the world and found all over YouTube and are 1st presumed to be protected by <u>Fair Use</u> and court action must be taken to prove otherwise.

15. The plaintiff has never been sued for copyright infringement before on YouTube or anywhere for that matter, but the tort and daily losses continue to this day.

16. In another copyright case, Universal argued that due to the fact-intensive analysis of "fair use," such analysis was not required. However, the Ninth Circuit stated that, because the **<u>"fair use" doctrine is codified in the U.S. Copyright Act, "[f]air use is not just excused by the law, it is wholly authorized by the law."</u>** It found that claimants or service providers like Universal could not shirk their responsibilities to at least consider whether a potential infringement was, in fact, authorized under U.S. Copyright Law.

17. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially more than **<u>$10,000,000</u>** which include, *inter alia*, direct, and consequential damages, extra expenses, loss of profits, attorney fees and damages.

<strong style="color:red">PLAINTIFF HAS PROVEN BEYOND A REASONABLE DOUBT AGAINST ALL DEFENDANTS:</strong>

<strong>COUNT 1<br><u>(MISREPRESENTATION UNDER 17 U.S.C. § 512(F))</u></strong>

18. The plaintiff sets forth the following facts in support of this cause of action.

19. This action arises out of a series of fraudulent Digital Millennium Copyright Act ("DMCA") claims, disputes and takedown notices provided to YouTube by ALL the Defendants from 2014-2024 in an ongoing campaign to stifle Plaintiff from competing and becoming more popular than them. **(See Exhibit B)**

20. As discussed herein, the Defendants were able to do this because of a hole in YouTubes's DMCA process, which allows any person to claim to be representing any rights holder in the world for purposes of issuing a DMCA claim or takedown, but this should not be permitted for vindictive reasons, like to stifle competition, without any consequences.

21. As far as You Tube is concerned, any person, anywhere in the world, can issue a takedown notice on behalf of any rights holder, anywhere.  This could be done by a competitive rival DJ, Recording Artists, Record Label, or any other content producer with malicious plans.

22. The Plaintiff was one of the most highly successful music DJs in Tampa Bay, Orlando, Miami, New York and Los Angeles markets and operated **multiple YouTube channels** from 2008-2021 that had a combined total of over 250,00+ Subscribers.  The Plaintiff was known as "DJ Short-E". Plaintiff was rewarded with a YouTube award and spent 10 hard years creating content and investing in his YouTube channel(s). Users can monetize their channels, while making a

good living from Google's AdSense program which places advertisements on user's videos and channels. The more video views and ad clicks, the more ad revenue a content creator can make. Plaintiff tried launching new channels.

23. On 10/24/2022 Defendants and their associates contacted YouTube and influenced their decision making once again. Shortly after he was notified his 2nd biggest YouTube channel was terminated **(Exhibit C)** see channel link:

https://www.youtube.com/channel/UCJpLM4bE48AzbmygBUcGVwQ

24. At the time that the Plaintiff's YouTube channel was canceled, he had accumulated over 100 million views and earned over $310,000 from YouTube but could have been earning that much every month if Defendants did not continue to violate the DMCA. Due to the actions of the Defendants, the Plaintiff lost his income and was forced to file bankruptcy and has not able to regain the success he once had prior to this fraudulent misrepresentation he has endured.

25. These strikes are false and in reality, nothing that was posted on the Plaintiff's YouTube channel falls outside of the "Fair Use" doctrine of the copyright laws. The strikes are sent under the Digital Millennium Copyright Act as what is called a DMCA takedown and these DMCA takedowns are sent to an individual such as the Plaintiff.

26. Under the DMCA takedown policy, copyright owners may file a notice with participating service providers to have allegedly infringing materials removed

11

from a service provider's website.  In exchange, the service provider is immune

from the liability of its users' potentially infringing actions. The notice must

include specific information, including a statement made under penalty of

perjury that the copyright owner is not filing a fraudulent take-down notice.  The

penalties for misrepresentation can include actual damages and attorney's fees.

27. Specifically, 17 U.S. Code § 512 (f) ("Section 512 (f)") of the DMCA states that

Any person who knowingly materially misrepresents under this section—

**(1)** that material or activity is infringing, or

**(2)** that material or activity was removed or disabled by mistake or

misidentification, shall be liable for any damages, including costs and attorneys'

fees, incurred by the alleged infringer, by any copyright owner or copyright

owner's authorized licensee, or by a <u>service provider</u>, who is injured by such

misrepresentation, as the result of the <u>service provider</u> relying upon such

misrepresentation in removing or disabling access to the material or activity

claimed to be infringing, or in replacing the removed material or ceasing to

disable access to it.

28. Collectively, the Defendants have violated Section 512 (f) by repeatedly filing

false DMCA claims and takedown notices against the Plaintiff from 2014-2025.

29. The way a Plaintiff can prove damages under the DMCA is set forth below:

*The Digital Millennium Copyright Act ("DMCA") provides that a service*

*provider, such as Google, may avoid liability for storing infringing content if the service provider expeditiously removes or disables access to the content after receiving a takedown notice from the copyright holder. 17 U.S.C. § 512(c)(1)(C); Lenz v. Universal Music Corp., 815 F.3d 1145, 1151 (9th Cir. 2016). The copyright holder must have "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).*

30. In this case the Complaint plausibly alleges a knowing and material misrepresentation, the Complaint alleges that the service provider instructed Plaintiff to handle this dispute with the Defendants directly. (See Exhibit evidence) YouTube was instructed by Defendants and influenced their decision making unlawful to "remov[ed] or disabl[ed] access" to the allegedly infringing material. 17 U.S.C. § 512(f). The takedowns all occurred by Defendants within 10 business days of a copyright claim being made. Because of these false claims, disputes and takedowns, strikes were issued to Mishiyev and as a result his YouTube channels were taken down and he cannot log back in to manage his other videos, channels or get more details.

31. The takedown notices in this matter were presented by the Defendants as being based on materials on the Plaintiff's YouTube channel that infringed upon

copyright owned by the Defendants and/or for artists that were represented by the Defendants.

32. The takedown notices contained misrepresentations that material or activity was infringing.

33. According to the evidence, Defendants knew at the time they sent the takedown notices that the representations in the takedown notices that material or activity was infringing were false.

34. The misrepresentations contained in the takedown notices were material and triggered YouTube's decision to remove or disable Plaintiff's channels causing massive harm and injury to the Plaintiff.

35. Plaintiff suffered damages within statute of limitations for his 2nd biggest YouTube channel starting in October 2022 when that too was terminated and taken down.

*"Misrepresentation in removing or disabling access to the material or activity claimed to be infringing. Relevant to this action, the DMCA provides that a copyright holder may be subject to liability for misuse of the takedown procedure. In particular, "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages." 17 U.S.C. § 512(f). The damages are recoverable when they are "incurred by the alleged infringer . . . who is injured*

*by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]"*

36. At the time that the Plaintiff's YouTube channels were canceled, he had accumulated over 110+ million views and earned over $310,000 with an average of <u>$65,000 per year and counting</u> on YouTube, up until Defendants actions stopped his income and severely harmed his livelihood. Due to the actions of the Defendants, the Plaintiff lost his income, his reputation was defamed, his credit score was ruined, and he was placed in an ongoing hardship.

37. Plaintiff has never been sued for copyright and never lost a copyright dispute.

38. It is known that people put frivolous copyright claims on popular videos to try and steal ad earnings and to stifle competition and to stop any momentum the video has by taking it down which causes a Youtuber to get a strike on their channel. This case is a perfect example of this anti-competitive conduct.

39. Defendants have routinely made what are called strikes against Plaintiff's YouTube channel for the same type of content that other YouTube creators routinely post and continue to post in 2025 without this type of scrutiny.

40. These strikes are based on allegations that the content that the Plaintiff has posted somehow violates copyright laws. These strikes are false and in reality,

nothing that was posted on the Plaintiff's YouTube channel falls outside of the "Fair Use" doctrine of the copyright laws.

41. The strikes are sent under the Digital Millennium Copyright Act as what is called a DMCA takedown and these DMCA takedowns are sent and an individual such as the Plaintiff is not able to effectively defend against these and ultimately can face action, such as his YouTube channel being removed.

42. These above-described acts and practices of the Defendants have injured and will likely continue to injure the Plaintiff.

43. Unless the Defendants are temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, the Defendant's actions will continue to severely harm and irreparably injure the Plaintiff for which there is no adequate remedy at law.

44. The Plaintiff now has plausibly stated an alleged claim(s) for misrepresentation under Section 512(f) of the Copyright Act.

45. Defendants have continued to harm and harass Plaintiff in emails found from 2022, 2023 and into 2024 by targeting Plaintiff and sending false claims and [Digital Millenium Copyright Act ("DMCA")] takedown notices and continue to ignore Plaintiff's copyright counter-notifications, arrogantly and spitefully, to hurt the Plaintiffs livelihood and Platforms like YouTube and others.

46. The Plaintiff has should have been a huge star in the music industry but instead

Plaintiff has suffered injury or damage of approximately **$10,000,000** not only for the videos below but also for 500+ other videos that were harmed and are no longer accessible or monetized by Plaintiff on account of Defendants' actions and sets forth the basis of such injury or damage arising after December 14, 2020, ***but a recent Supreme Court ruling also allows for monetary relief for fraudulent copyright infringement for damages outside of the statutes of limitations.***

47. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.

48. The acts of Defendants described herein constitutes outrageous conduct against Mr. Mishiyev. These acts terrorized Mr. Mishiyev and were intended to cause Plaintiffs to suffer emotional distress, or, alternatively, Defendants engaged in the conduct with reckless disregard of the high probability of causing Mr. Mishiyev to suffer emotional distress even though his original count for this is pre-empted Plaintiff feels excruciating distress from this.

49. Mr. Mishiyev continues to suffer severe emotional distress every day and is requesting monetary relief so he can try to recover and get some stability back in his life as he once had prior to all of this malicious activity.

50. The Plaintiff has **KEY witnesses** on the inside who are willing to testify and give a deposition. For example, "Allison Gordon" who worked for Defendants associates at a radio station called WiLD 94.1FM and played their music for 18

years and she has given Plaintiff crucial information about this **scheme to harm the Plaintiff!** She stated quote, *"Almost everyone who worked there witnessed them vowing to ruin you, there are plenty witnesses your attorney can call"* She stated this again as recently as January 2025. **(See Exhibit E)**

51. Plaintiff is the only DJ that is being targeted by Defendants and these associates mentioned in this complaint and a Discovery process will reveal more details. The outrageous conduct of Defendants, as set forth above, constitutes intentional infliction of emotional distress although it may not be actionable under the laws of the State of Floride because of the pre-empted Copyright count, it does not negate the fact that Plaintiff is suffering with excruciating pain and depression because of these incidents.

52. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially more than **$10,000,000** which include, *inter alia*, direct, and consequential damages, extra expenses, loss of profits, attorney fees and damages. *Some YouTube DJ's make millions of dollars per year* like Plaintiff's friend **DJ Vlad** who Mr. Mishiyev introduced to these Defendants and now has 6 million subscribers! Watch video:

HTTPS://WWW.YOUTUBE.COM/WATCH?V=F9F3N8HLGY0

53. This is how 10 million in monetary relief is justified for this Summary Judgment motion.

54. Each of the following videos were averaging about $500-$600 per month in ad revenue which has been sabotaged by Defendants. Also, ***500+ other videos lost monetization because of this misrepresentation causing Plaintiff to lose millions of dollars in possible revenue*** because of the constant sabotage he has endured with these Defendants and the DJs signed to their Record labels and their radio associates in Tampa and Miami, FL who have been set out to destroy Plaintiff and Mr. Mishiyev has shown this court clear evidence.

http://www.youtube.com/watch?v=zIo3zNDGbY0 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=4fZFa5cuIEE ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=ngLzAoSfdP4 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=6H4h2UESE9w ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=G5NWOzNz3cY ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=z5bxmI59DV4 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=kDJZZCXQPR0 ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=WJhM8A93Npg ($500 per month lost revenue since 04/14/2021)

http://www.youtube.com/watch?v=ZCU2h3drj08 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=1nBmVV6U6DY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=thLIIFBK-jY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FE6wj7BCPj0 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=HYJRs13ODgs ($500 per month lost revenue since 10/23/202)

http://www.youtube.com/watch?v=O8qOiHu0OQ4 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FCHXlOJRxaQ ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=4B0h08aGSYM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=0ihv0V_Ldo8 ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=thLIIFBK-jY ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=7YkeCHNaUkM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=FCHXlOJRxaQ ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=4B0h08aGSYM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=zKG_3GxlRmg ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=UGgngkA2vHw ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=IZ0cLVB9wuM ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=Racu88sD7eE ($500 per month lost revenue since 10/23/2022)

http://www.youtube.com/watch?v=2cAE6d0yH4I ($500 per month lost revenue since 10/23/2022)

## **DEMAND FOR SUMMARY JUDGEMENT OR JURY TRIAL**

Wherefore, Plaintiff respectfully requests for this court to grant this Motion for Summary Judgement in favor of the Plaintiff because these Defendants have simply FAILED to take court action against Mr. Mishiyev to prove their claims, instead they just wanted to stifle and injure him from competing against them or their co-conspirators who are Plaintiff's evil and malicious rivals. Based on the exhibits and issues mentioned within this Complaint and all other filings in the docket, this Motion for Summary Judgement should be granted pursuant to 17 U.S.C. § 512(f).

RESPECTFULLY SUBMITTED <u>UNDER OATH</u>,
ON THIS **28TH** DAY OF JANUARY 2025.

<u>/s/Erik Mishiyev</u>
Plaintiff Pro Se
6697 Emmy Lane Apt 309
Wesley Chapel, FL
33544

**EXHIBIT "A" COUNTER NOTICE**

2/20/24, 11:54 AM                                  Gmail - Copyright Counter Notification

 Gmail                                          Erik Mishiyev <erikmishiyev@gmail.com>

## Copyright Counter Notification

**Erik Mishiyev** <erikmishiyev@gmail.com>                              Sun, Jan 28, 2024 at 2:16 PM
To: "Rock, Loreal R." <LRock@jenner.com>

Hi Ms. Rock,

Please note your clients now have 10-14 days from today to reinstate those videos on youtube as you mentioned on the
phone that your clients never received the counter notifications so i am sending it to you directly to send to them.

I am protected by FAIR USE and FAIR DEALINGS and my contact information and sworn statements etc, everything that
is needed for a legitimate counter notification document.

Thank You and hope to have a resolution within 10-14 days from today or we will have to take further legal action. Keep in
mind i am losing money daily on youtube because your clients are not cooperating with the rules.

Thank You

---------- Forwarded message ---------
From: **Erik Mishiyev** <erikmishiyev@gmail.com>
Date: Sun, Jan 28, 2024 at 2:08 PM
Subject: Copyright Counter Notification
To: Rock, Loreal R. <LRock@jenner.com>, DJ SHORT-E SHOW <djshortehot4eva@gmail.com>

PLAINTIFF'S COPYRIGHT COUNTER NOTIFICATION

## Mishiyev v. UMG Recordings, Inc., et al.,
## Case No. 8:23-cv-01942-MSS-NHA

1. Your contact information

- **Plaintiff Full legal name**: Erik Mishiyev

- **Email address:** erikinc@icloud.com

- **Physical address:** 4504 W Spruce St apt 365 Tampa. FL 33607

- **Telephone number:** 917-727-4685

2. Formatted links to the content

Counter notifications must include links to the content that was removed due to a copyright removal
request. **Links must be sent in a specific format** (see below). General information such as channel name
or channel URL is not acceptable.

- http://www.youtube.com/watch?v=onIRQn0zCW8

https://mail.google.com/mail/u/0/?ik=726d546b5e&view=pt&search=all&permmsgid=msg-a:r4209241252034665918&dsqt=1&simpl=msg-a:r4209241...    1/3

23

- http://www.youtube.com/watch?v=1nBmVV6U6DY
- http://www.youtube.com/watch?v=ngLzAoSfdP4
- http://www.youtube.com/watch?v=K5y-8-bU8p8
- http://www.youtube.com/watch?v=dSKxm6Bk8FI
- http://www.youtube.com/watch?v=9Lb01gKxTzQ
- http://www.youtube.com/watch?v=kDJZZCXQPR0
- http://www.youtube.com/watch?v=z5bxml59DV4

3. Legal statements

Agree to and include the following required legal statements

- *"I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant."*

- *"I swear, under penalty of perjury, that I have a good faith belief that the material was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled."*

4. Statement to the claimant

In your own words, you must include a statement to the claimant that clearly and concisely explains **why you believe the removal of the content at issue was a mistake or misidentification**. Misidentification includes cases of exceptions to copyright, such as fair use or fair dealing.

"I believe the removal of the content at issue was a mistake or misidentification because my video(s) are FAIR USE and or FAIR DEALING as they are transformative works used for promotional campaigns to market my DJ brand and to display my talents. I am protected by the DMCA fraudulent copyright claim laws, I am prepared to defend myself in a court of law if claimants decide to take court action against me."

5. Your signature

Complete and valid counter notifications require the **physical or electronic signature** of the uploader or representative authorized to act on their behalf.

Truthfully under oath,

_____

Erik Mishiyev/Plaintiff

# DMCA Counter-Notice Process

After a takedown notice is sent to a service provider, the provider usually notifies the user, subscriber or other person who is responsible for engaging in the infringing activity. If that person – the alleged infringer – in good faith does not think the activity is infringing, he or she can send a Digital Millennium Copyright Act (DMCA) counter notice to the service provider explaining why they disagree with the copyright owner. Like the takedown notice, there are certain elements that must be contained in a DMCA counter notice. Providing false information in a counter notice is punishable under federal law, and those making false notices can be sued and held civilly liable.

After receiving a counter notice, the service provider is obligated to forward that counter notice to the person who sent the original takedown notice. Once the service provider has received a valid DMCA counter notice they must wait 10-14 days. If the copyright owner sues the alleged infringer in that time frame the material will remain down, but if no suit is filed then the service provider must re-activate or allow access to the alleged infringing activity.

--
Thank You,
Erik M. 917-727-4684

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

_____

 **01-28-2204 Counter Notifications.pdf**
213K

**EXHIBIT "B" ON GOING DMCA VIOLATIONS**

**EXAMPLE SCREENSHOT OF UMG ON-GOING INCIDENTS 12/2024**



**EXHIBIT "C"**

 **Hot Spots Inc. <hotspotsinc@gmail.com>**

## Channel mistakenly terminated

**YouTube Copyright** <youtube-disputes+1kgui8mfgx1dv0q@google.com>                    Mon, Oct 24, 2022 at 7:43 AM
Reply-To: YouTube Copyright <youtube-disputes+1kgui8mfgx1dv0q@google.com>
To: hotspotsinc@gmail.com

Hello,

Your channel [The Short-E Show] was terminated because we determined it was linked to [DJ Short-e], a channel that was disabled for having three or more Copyright strikes. This means that you can't access, possess, or create any other YouTube accounts unless the linked channel is reinstated (by resolving its copyright strikes).

A notification that your channel was terminated was sent to the email address associated with your terminated YouTube channel. Please check your inbox (including your spam folder) for the following message:
*We'd like to inform you that your account has been suspended because we concluded that it was linked to a channel that was disabled for having three or more Copyright strikes.*

For more information about copyright strikes and terminations, please visit our Help Center.

Sincerely,
The YouTube Team

On October 23, 2022 hotspotsinc@gmail.com wrote:

> To whom it may concern:
>
> We are trying to resolve any copyright claims that were mistakenly put on our channel. Can you please send the videos in question and the contact information for the claimants, so we can request a retraction.
>
> https://www.youtube.com/theshorteshow
>
> Also it has been over 90 days and the strikes should expire and the channel should be reinstated.
>
> Thank You,
> Erik 917-727-4684
> The Short-e Show on THE CW
> Miami, Vegas, Austin
> Saturdays 2AM

**EXHIBIT "D" SHOWS**
**ASSOCIATES RHETORIC HATE SPEECH**

**QUOTE "YOUTUBE MIX YOU CAN'T GET PAID OFF OF" and**
**"EVERYONE LAUGHS AT YOU IN YOUR HOME TOWN… YOU WERE**
**NEVER BOOKED…GO CY YOURSELF TO SLEEP F#CKBOY"**

**-BOOTLEG (ASSOCIATED WITH DEFENDANTS)**



**Following**       **You**

 **bootlegkev** commented: It's funny I lived in Tampa 2+ years and u never were booked a single time at Drynk or The Lodge like I was on a weekly basis. Everyone laughs at u in ur own home town. That's gotta suck. Go cry urself to sleep fuck boy 4m 

 **bootlegkev** commented: U obviously aren't a talent. Your claim to fame is making youtube mixes. That's all. My resume speaks for its self buddy. You sir, are a corny little old dick head who obviously is delusional 🤣😂🤣😂 again go make another corny Youtube mix, that u can't get paid off of. Make "Mega Dance Mix End Of 2017" wrap up or some shit lol 5m 

    



**LOCAL EMPLOYERS PERCEPTION**





**DEFENDANTS ASSOCIATES CALLED PLAINTIFF ON JAN. 2024 AND ADMITTED THEY INFLUENCED DEFENDANTS TO SABOTAGE HIM.**

**EXHIBIT "E" THE KEY WITNESS**



Miami owns Tampa

You may want to hit up Morgan and Morgan dude is a publicity hound so he does a lot of pro Bono

Somethings not right can't pinpoint it exactly

They will have a conflict or interest I think they advertise on wild

I'll try tho!

I have a lot of payola info too. Hes in bed with Izzy Sanchez ripping off local artists its big. We need a private investigator

Morgan has zero loyalty to wild believe me



**Alli That Girl** ›

Cool thx for the connect need as much help as I can get

My life has been turned upside down I wouldn't be surprised if he had something to do with getting my YouTube channels taken down. Bootleg kev in LA came at me for no reason one day when I lived out there. Never met that dude... 🤷‍♂️

Dude I have a vested interest in seeing you succeed. This man traumatized me with 18 years of emotional and verbal abuse. Btw almost anyone who worked there witnessed him vowing to ruin you so there's lots of people your attorney can call believe me!

Text Message

  

      

36



**EXHIBIT "F" THE AFFADAVIT**

## AFFIDAVIT OF ERIC GREEN, IN SUPPORT OF ERIK MISHIYEV

STATE OF <u>Florida</u> )

                  SS:

COUNTY OF <u>Volusia</u> )

       BEFORE ME, the undersigned authority, personally appeared <u>ERIC GREEN</u>, who after being duly sworn, deposes and states as follows:

1.  My name is Eric Green, Founder of Boys 2 Men International, a non-profit 5013c organization. In exchange for Erik Mishiyev ("Mr. Mishiyev") lending his services on our board of directors, I agreed to call the local bars and nightclubs to try and book Mr. Mishiyev aka DJ Short-e because I remember him as one of the Bay area's most sought out and successful DJs in the past.

2.  From January 2020 to 2022 I called various venues all throughout the Tampa, Florida ("Tampa") area.

3.  On December 18, 2020, I met with a popular nightclub owner named Gene Osteen at his office located behind Club Envy in Tampa, FL.

4.  During my meeting with him, Gene proceeded to state that he liked DJ Short-e but it was a risk to hire him because of what Orlando Davis and Beasley media employees said to him on **Friday November 11th, 2020**, specifically about him being a cocaine user, and that he doesn't want his business to be caught up in any bad publicity. Defendant and his employees said these statements on behalf of Beasley media in an attempt to sabotage their competitor. Mr. Mishiyev and I

believe that was not hired because of what Mr. Davis and some of his employees said to Gene Osteen on or about 11/11/2020 and many other dates over the years.

5.  I am willing to testify as to this, in court and under oath.

6.  On another note, I've known Mr. Mishiyev since 2005 and know for a fact that he does not use cocaine.

7.  I also called Club Skye to see if I could book Mr. Mishiyev there since he worked at this venue from 2004-2005 before Orlando Davis got him fired from his residency there and brought in the radio station DJs. Ownership at Club Skye or a employee named Alfredo, or whoever answered their phone stated that Orlando would not want DJ Short-e playing there at all, not even on the days Wild 94.1FM wasn't doing their live broadcast.

8.  I called several other venues, including Hyde Park Café, The Kennedy and many more, but they all seemed to give me the cold shoulder after I mentioned Mr. Mishiyev stage name DJ Short-e. I was shocked because when I first met Mr. Mishiyev he was booked 3 to 4 nights per week and had a great following.

9.  I am a former army vet with a slight disability, but I can recall an event that my organization produced where I had Mr. Mishiyev and Mr. Davis working together coincidentally. I tried to introduce Mr. Mishiyev to Mr. Davis at Wild 94.1 studios just a couple days later but Mr. Davis seemed to avoid my attempt to help DJ Short-e get a gig on the radio.

10. In my opinion I believe Mr. Davis views Mr. Mishiyev as a threat and instead of trying to help him he has been out to destroy his good name and DJ career in the radio and music industry by sabotaging his main competitor.

11. I also believe Mr. Davis's actions interfered with our on going programs and events
to continue to help our childen.

FURTHER AFFIANT SAYETH NOT.

_____
AFFIANT

BEFORE ME, the undersigned authority, personally appeared ERIC GREEN _____,
personally known to me or who produced FLDL G650-212-58-088-0 _____, as
identification, who under oath, executed the foregoing on ____26th____, JUNE ,
2023.

PHILIP CLARK
Notary Public
State of Florida
Comm# HH293501
Expires 7/26/2026

_____
NOTARY PUBLIC
My commission expires: 7/26/2026

41

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on counsel for the Defendants

by email as follows:

Gianni P. Servodidio (Lead Counsel)
(N.Y. Bar No. 2619039) Pro Hac Vice
Jenner & Block LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1620 Phone
(212) 891-1699 Fax
GServodidio@jenner.com

Andrew H. Bart (Lead Counsel)
(N.Y. Bar No. 1206341)
Pro Hac Vice
Jenner & Block LLP
1155 Avenue of the Americas
New York, New York 10036
(202) 891-1600 Phone
(202) 891-1699 Fax
ABart@jenner.com

Loreal Rock (Maryland Bar No.1712140143)
Pro Hac Vice
Jenner & Block LLP
1099 New York Avenue, Suite 900
Washington, D.C. 20001
(202) 639-6000 Phone
(202) 639-6066 Fax
LRock@jenner.com

RESPECTFULLY SUBMITTED on this 28th day of January 2025.

ERIK MISHIYEV
/s/ Erik Mishiyev
Plaintiff Pro Se