United States District Court
Middle District of Florida
Tampa Division

ERIK MISHIYEV,

    Plaintiff,

v.                                        No. 8:23-CV-1942-MSS-NHA

UMG RECORDINGS, INC;
SONY MUSIC ENTERTAINMENT;
THE ORCHARD MUSIC;
YT ROCKET; INGROOVES;
ODMEDIA NETWORK;
and VIOLENT MUSIC BV,

    Defendants.

---

### Defendants UMG Recordings, Inc., Ingrooves, Sony Music Entertainment, and Orchard Enterprises NY, Inc.'s <u>Motion for Attorneys' Fees</u>

    Defendants UMG Recordings, Inc. ("UMG"), Isolation Network, Inc. (erroneously sued as "Ingrovees"), Sony Music Entertainment ("SME"), and Orchard Enterprises NY, Inc. (erroneously sued as "The Orchard Music") ("The Orchard") (collectively, "Defendants"), hereby move this Court to award attorneys' fees in the amount of $294,900 pursuant to 17 U.S.C. § 505.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

    *Pro se* Plaintiff Erik Mishiyev ("Plaintiff") was warned by the Court not to file baseless claims. He did so anyway. After two years of litigation, four

operative complaints, two motions to dismiss, and one cross-motion for summary judgment, the Court has rejected in full Plaintiff's frivolous claims that Defendants violated Section 512(f) of the Copyright Act and other laws by sending Digital Millenium Copyright Act ("DMCA") takedown requests as to Plaintiff's clearly infringing YouTube videos. Defeating these groundless claims required significant effort and expense because, among other things, Plaintiff filed a manifestly false pleading alleging, without any factual support, that Defendants sent takedown notices in "2022, 2023 and into 2024." ECF No. 39 ¶ 61. Plaintiff needs to be deterred from weaponizing the legal system and monopolizing the limited resources of the courts. Plaintiff must understand that litigation has a price tag, and one he cannot always expect his adversaries to pay. Accordingly, Defendants respectfully request that the Court grant their motion and award attorneys' fees in the amount of $294,900.

## BACKGROUND

Plaintiff filed his Complaint on August 28, 2023, asserting claims for misrepresentation under Section 512(f) of the Copyright Act, tortious interference with business relations, and violation of Florida's Unfair and Deceptive Trade Practices Act. ECF No. 1. On September 25, 2023, Magistrate Judge Sansone found that Plaintiff's Complaint failed to "clearly identify which facts [Plaintiff] believes each defendant is responsible for" and ordered Plaintiff to file "an amended complaint that complies with the Federal Rules

2

of Civil Procedure." ECF No. 5 at 5–6. On October 26, 2023, Plaintiff filed an Amended Complaint, asserting the same claims and underlying allegations as those in the initial Complaint. ECF No. 7. Defendants moved to dismiss. ECF No. 27.

On February 16, 2024, this Court granted Defendants' motion to dismiss, holding that Plaintiff's claim for misrepresentation under Section 512(f) of the Copyright Act was time-barred and the other claims were preempted. ECF No. 38 at 2–3. This Court granted Plaintiff leave to amend his Section 512(f) claim, but expressly advised Plaintiff he could "only allege claims of injury or damage" that were "***not barred by the three-year statute of limitations***" and "warned that if he attempts to file a second amended complaint without a fair basis in fact or law, he may be subjected to sanctions pursuant to Fed. R. Civ. P. 11." *Id.* at 3, 4 (emphasis added).

On March 9, 2024, Plaintiff filed a Second Amended Complaint, his *third* complaint in this action, alleging that unknown and unspecified "Defendants" had "continued to harm and harass Plaintiff in emails from 2022, 2023 and into 2024 by targeting Plaintiff and sending false claims and [Section 512] takedown notices." ECF No. 39 ¶ 61. Defendants again moved to dismiss. ECF No. 42.

The Court granted in part and denied in part Defendants' second motion to dismiss, finding that Plaintiff had alleged takedowns from all Defendants

3

within the statute of limitations. ECF No. 61 at 9 (quoting ECF No. 39 ¶ 61). The Court also declined to dismiss the Section 512(f) claim because the Defendants "ha[d] not raised an affirmative defense to Plaintiff's misrepresentation claim, they ha[d] not filed a motion for judgment as a matter of law, and, of course, there [was] no evidence developed as to what formed the basis of [Moving] Defendants' subjective good-faith belief that the use in question 'was unauthorized and was not "fair use."'" *Id.* at 13 (quoting *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 Fed. App'x 766, 772 (11th Cir. 2020)).

On December 20, 2024, Plaintiff filed his Third Amended Complaint, his *fourth* complaint in this action. ECF No. 65. In his Third Amended Complaint, Plaintiff identified 28 videos that he summarily alleged were taken down "WITHIN [THE] STATUTE OF LIMITATIONS" due to Defendants' allegedly false takedown notices (hereinafter the "Videos at Issue"). *Id.* at ¶ 70, Exs. A, B. On January 24, 2025, Defendants answered. ECF No. 86. Four days later, on January 28, 2025, Plaintiff inexplicably moved for summary judgment without any factual or legal support. ECF No. 89.

On February 18, 2025, Defendants filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment. ECF No. 94. Defendants searched their records for all 28 videos that Plaintiff alleged were taken down "WITHIN [THE] STATUTE OF LIMITATIONS." *Id.*

4

at 6, 10. Defendants filed declarations attesting that (1) they did not send any takedown requests with respect to ten of the Videos at Issue; (2) they sent takedown requests for 17 of the Videos at Issue in 2019, which was outside the statute of limitations, and (3) SME sent *one* takedown request about *one* Video at Issue in 2024. *Id.* at 10–11; *see also* ECF Nos. 95, 96, 97. Defendants moved for summary judgment on the grounds that (1) Plaintiff's claims regarding all but one Video at Issue were barred by the applicable statute of limitations; (2) Plaintiff lacked standing to assert claims as to all but Video at Issue because his claims as to those Videos at Issue had been assigned to his bankruptcy estate after he declared bankruptcy; and (3) with respect to the one Video at Issue subject to a takedown request in 2024, SME had a subjective good faith belief that Plaintiff's use was unauthorized and was not a fair use. *See* ECF No. 94 at 2.

On September 11, 2025, the Court granted Defendants' motion for summary judgment. ECF No. 151. The Court held that "***Plaintiff's claims with respect to all but one of the videos at issue are barred by the Copyright Act's three-year statute of limitations***." *Id.* at 4 (emphasis added). The Court held that the claim with respect to the remaining video failed "because of SME's subjective good faith belief that the use in question was unauthorized and was not a fair use." *Id.* at 4-5 (citation omitted). The

5

Court granted summary judgment for Defendants and directed the Clerk to enter judgment and close the case. *See id.* at 7.

Throughout this litigation, Plaintiff has also filed a barrage of improper notices and motions, *see, e.g.*, ECF Nos. 34, 52, 64, 91, 116, 119, 120, 123, 126, 130, 133, 134, 148; despite repeated reprimands from the Court, *see, e.g.*, ECF Nos. 71, 122, 124, 131, 149. Furthermore, Plaintiff bombarded Defendants and their counsel with a constant stream of demands and threats, seeking to extort a windfall payment or else face protracted litigation from Plaintiff because, as he repeatedly represented to Defendants' counsel, he has nothing to lose. *See, e.g.*, Ex. A (email from Plaintiff threatening a new lawsuit and adding, "[t]ell your clients we can do this for the next 10 years if they want, they can't collect money from someone who has none and will file another Bankruptcy if I have to"); ECF No. 105-1 (email from Plaintiff demanding a "GLOBAL SETTLEMENT OF $100,000,000 MILLION DOLLARS" and threatening that "you'd be fools if you didn't think of the possibility of the FBI or CIA watching these cases that could possibly turn into criminal"). These were not mere threats. During the course of this litigation in federal court, Plaintiff filed new litigation against Defendants UMG and SME, and their CEOs, in Florida state court, which remains pending. *See* ECF No. 105 ¶ 9 n.1; *Mishiyev v. Beasley Media Group, et al.*, No. 25-CA-001914, Doc Index No. 4, (Fla. 13th Jud. Cir. Mar. 6, 2025).

## ARGUMENT

### I. Defendants Should Be Awarded Their Reasonable Attorneys' Fees

The Copyright Act provides that a court has the discretion to "award a reasonable attorney's fee to the prevailing party" in an action under the Act. 17 U.S.C. § 505. When determining whether to award attorneys' fees pursuant to Section 505, the Supreme Court has directed district courts to consider factors including "'frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence,'" giving "substantial weight to the objective reasonableness of the losing party's position" and "due consideration to all other circumstances relevant to granting fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199–200, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). By this standard, Defendants are entitled to attorneys' fees.

*First*, Plaintiff's position was objectively unreasonable. For avoidance of doubt, Defendants only seek fees as to Plaintiff's time-barred claims and have discounted their request for attorneys' fees accordingly. Plaintiff knew he was not permitted to recover for time-barred claims. The Court explicitly warned Plaintiff that he could "only allege claims of injury or damage" that were "***not barred by the three-year statute of limitations.***" ECF No. 38 at 3 (emphasis added). Plaintiff disregarded that admonition and pleaded time-

7

barred claims in an effort to overcome Defendants' motions to dismiss. Defendants were forced to go through the effort of compiling declarations and moving for summary judgment to defeat a claim with no basis in fact. Plaintiff's position that he was entitled to state time-barred claims was objectively unreasonable, if not sanctionable. *See id.* at ¶ 7 (warning Plaintiff "that if he attempts to file a second amended complaint without a fair basis in fact or law, he may be subjected to sanctions pursuant to Fed. R. Civ. P. 11"). Indeed, the reason Plaintiff is *pro se* is because any licensed attorney in good standing would know that signing their name to such knowingly false pleadings would expose them to sanctions.

*Second*, Plaintiff must be deterred. Plaintiff is a vexatious *pro se* litigant who will not stop filing frivolous lawsuits in state and federal courts around the country.[1] Plaintiff appears to believe that courts and his adversaries will

---

[1] *See e.g.*, *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154 (N.D. Cal. 2020) (a suit against YouTube for termination of his account; dismissed), *aff'd*, 857 Fed. Appx. 907 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 873 (2022); *Mishiyev v. YouTube, LLC, et al.,* No. 21-CA-007563, Doc Index No. 11 (Fla. 13th Jud. Cir. May 20, 2022) (another suit against YouTube for termination of his account; dismissed); *Mishiyev v. Youtube, LLC et al.*, No. 24-cv-08661-CRB, ECF No. 36 (N.D. Cal. Dec. 20, 2024) (another suit against YouTube for termination of his account; dismissed); *Mishiyev v. Davis, et al.*, No. 8-23-cv-01940-KKM-TGW, ECF No. 37 (M.D. Fla. Jan. 25, 2024) (a federal case against Orlando Davis and Beasley Media Group, LLC; stayed with a finding that Mishiyev's behavior was "vexatious, designed to harass Defendants, to waste the judicial resources of multiple courts, and to avoid the consequences of an unfavorable decision").

bear the burden of this spate of litigation. Plaintiff needs skin in the game. An award of attorneys' fees in this case would serve to deter Plaintiff from future frivolous litigation, and serve the interest of the Copyright Act generally by discouraging harassing litigation against copyright holders who make good faith exercise of their rights. *See Fogerty*, 510 U.S. at 524 (holding that the purpose of attorneys' fees awards under the Copyright Act is to "to encourage the production of original literary, artistic, and musical expression for the public good").

*Finally*, Plaintiff is not immune to an award of attorneys' fees simply because he is *pro se*. Although *pro se* litigants are given some leeway, "one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (citation omitted). "*Pro se* plaintiffs may be ordered to pay the defendant's attorneys' fees where the plaintiff acts in bad faith, 'determined by objective standards of reasonableness.'" *Martins v. Royal Caribbean Cruises, Ltd.*, 431 F. Supp. 3d 1355, 1365 (S.D. Fla. 2019) (quoting *Patterson*, 841 F.2d at 387). As previously stated, Plaintiff's position—and conduct—was objectively unreasonable.

An award of reasonable attorneys' fees is warranted.

9

## II. Defendants' Requested Attorneys' Fees Are Reasonable

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999). "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* However, "[t]he court . . . is itself an expert on the question [of reasonable rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303.

Defendants seek to recover $294,900 for 474.80 hours billed by attorneys at Jenner & Block LLP ("Jenner"). *See* Declaration of Gianni P. Servodidio ("Servodidio Decl.") ¶ 3. Jenner has a nationally recognized and award-winning Content, Media, and Entertainment practice group. *Id.* ¶ 4. Although the claims in this case were frivolous, Defendants had no choice but to take the claims seriously and vigorously defend against them both because of the amount sought by Plaintiff and because of the potential to create bad precedent for Defendants, which are music companies that own or control exclusive rights to the copyrights of many of the world's most popular sound recordings. *See* ECF No. 94 at 3. Defendants distribute their copyrighted recordings across the digital music ecosystem pursuant to agreements with online service

10

providers like YouTube, *id.* at 3-4, and have the right to notify YouTube when individuals such as Plaintiff use those copyrighted recordings without authorization and without compensating Defendants and their recording artists. For that reason, when Plaintiff filed this lawsuit contending that *Defendants* were the ones who violated the Copyright Act by protecting their rights, Defendants turned to the Jenner lawyers in this case, who have expertise in the DMCA claims under the Copyright Act and other legal issues involving the intersection of content and technology. *See* Servodidio Decl. ¶¶ 5, 6, 7, 8.

For lawyers of "comparable skills, experience, and reputation," Jenner's requested attorneys' fees are not only reasonable, but well below the market rate. The lead attorneys on this case have worked on some of the most significant lawsuits on behalf of members of the entertainment industries. *See id.* ¶¶ 5, 6. Indeed, the hourly rate in this case is a steep discount from their standard rates, more than 40% less than "rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299; *see* Servodidio Decl. ¶ 2. And this Court has recently seen evidence that "many partners at large firms in the District with comparable experience charge between $600 and $950 per hour for intellectual property litigation." *Glob. Glass Techs., Inc. v. Rsch. Frontiers, Inc.*, No. 8:20-CV-02517-MSS-AEP, 2025 WL 2088421, at *4 (M.D. Fla. July

11

25, 2025) (Scriven, J.) (sustaining in part defendants' objections to a report and recommendation reducing an attorneys' fees award).

As Defendants will substantiate in due course in a supplemental motion pursuant to Local Rule 7.01(c), the hours expended by Jenner were reasonable and necessary to successfully defend against baseless and disorganized claims from a vexatious *pro se* Plaintiff. Over two years, Jenner briefed two motions to dismiss, *see* ECF Nos. 27 & 42, and one motion for summary judgment, *see* ECF No. 94. Although the case did not proceed to discovery, Jenner still needed to conduct factual investigations with each client to prepare the declarations and exhibits in support of the motion for summary judgment. *See* ECF Nos. 95, 96, 97, 98. Meanwhile, throughout the case, Plaintiff filed a spate of other bizarre and procedurally inapposite motions, *see, e.g.*, ECF Nos. 34, 52, 64, 91, 116, 119, 120, 123, 126, 130, 133, 134, 148; despite repeated reprimands from the Court, *see, e.g.*, ECF Nos. 71, 122, 124, 131, 149. Each time Plaintiff filed a motion or other notice, Jenner attorneys needed to review it, evaluate it, inform Defendants, and devise a strategy, even if the motion was ultimately dismissed *sua sponte*. This work took time and was by nature inefficient.

Finally, Defendants have already applied a significant discount to fees actually paid. First, Defendants have declined to seek fees for work done by attorneys and staff who are not counsel of record, worth $22,010.80. *See* Servodidio Decl. ¶ 10. Second, Defendants have cut 20% across-the-board from

12

the fees charged to them to account for work done to refute Plaintiff's claim about the one video that was subject to a 2024 takedown notice. *See id.* That discount amounts to $73,725. *See id.* Altogether, Defendants are seeking 25% less than they would otherwise be entitled, underscoring the reasonableness of the request.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant this Motion and award attorneys' fees in the amount of $294,900.

Dated: September 29, 2025

Respectfully submitted,

/s/ *Gianni P. Servodidio*
JENNER & BLOCK LLP
Gianni P. Servodidio (Lead Counsel)
(N.Y. Bar No. 2619039)
*Pro Hac Vice*
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1620 Phone
(212) 891-1699 Fax
GServodidio@jenner.com

Kara V. Brandeisky (D.C. Bar No. 90020421)
*Pro Hac Vice*
1099 New York Avenue, Suite 900
Washington, D.C. 20001
(202) 639-6000 Phone
(202) 639-6066 Fax
KBrandeisky@jenner.com

*Attorneys for Defendants*

## Local Rule 3.01(g) Certification

Defendants' counsel certifies that Defendants' counsel conferred with *pro se* Plaintiff in a good faith effort to resolve the need to file a motion for attorneys' fees. On September 16, 2025, Defendants' counsel first advised Plaintiff of Defendants' intent to file the instant motion to seek attorneys' fees. *Pro se* Plaintiff indicated he did not consent to the relief requested. On September 22, 2025, Defendants' counsel again advised Plaintiff of Defendants' intent to file a motion to seek attorneys' fees. *Pro se* Plaintiff responded, "Hi, again I have nothing to lose and no attorneys fees will be rewarded and if I have to I will list your clients in Bankruptcy." On September 25, 2025, Defendants' counsel emailed Plaintiff, "As we previewed for you, Defendants intend to file a motion for attorneys' fees. Pursuant to Local Rule 3.01(g), please let me know if you consent to or oppose this request. If I do not hear back from you by noon tomorrow, I will assume that you oppose this request." *Pro se* Plaintiff responded, "I oppose this request and stated I will be filing an appeal." *See* Ex. B.[2]

/s/ *Kara V. Brandeisky*
Kara V. Brandeisky

---

[2] Defendants do not attach the aforementioned communications sent prior to September 25, 2025 because they contain statements made pursuant to Federal Rule of Evidence 408.