United States District Court
Middle District of Florida
Tampa Division

ERIK MISHIYEV,

       Plaintiff,

v.                                No. 8:23-CV-1942-MSS-NHA

UMG RECORDINGS, INC;
SONY MUSIC ENTERTAINMENT;
THE ORCHARD MUSIC;
YT ROCKET; INGROVEES;
ODMEDIA NETWORK;
and VIOLENT MUSIC BV,

       Defendants.

---

### Defendants UMG Recordings, Inc., Isolation Network, Inc., Sony Music Entertainment, and Orchard Enterprises NY, Inc.'s Motion for Attorneys' Fees

Defendants UMG Recordings, Inc. ("UMG"), Isolation Network, Inc. (erroneously sued as "Ingrovees"), Sony Music Entertainment ("SME"), and Orchard Enterprises NY, Inc. (erroneously sued as "The Orchard Music") ("The Orchard") (collectively, "Defendants"), hereby move this Court under Local Rule 7.01 to award attorneys' fees in the amount of $294,900.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is a copyright case brought by a vexatious pro se litigant. Despite multiple warnings from the Court, Plaintiff Erik Mishiyev ("Plaintiff")

knowingly brought claims barred by the three-year statute of limitations, tying Defendants up in court for years and forcing them to expend considerable resources defending against baseless claims and Plaintiff's unceasing barrage of unhinged threats and unreasonable demands (which have continued unabated even after the Court's dismissal of his claims). The Court held on March 9, 2026 that Defendants are entitled to an attorneys' fees award. ECF No. 165. The only unresolved issue is, how much? *See id.* Defendants request $294,900 for 474.60 hours of work, a figure that reflects the scope and duration of litigation that Plaintiff needlessly prolonged and exacerbated. Defendants' supplemental motion for attorneys' fees should be granted.

## BACKGROUND

The full factual and procedural history of this case is detailed in Defendants' motion for a determination that they are entitled to attorneys' fees. *See* ECF No. 158 at 2–6.

Before moving for attorneys' fees, Defendants' counsel conferred with pro se Plaintiff in a good faith effort to resolve this dispute and avoid the need for motion practice. *See* Declaration of Gianni P. Servodidio ("Servodidio Decl.") ¶ 2. Counsel first notified Plaintiff of Defendants' intent to seek attorneys' fees on September 16, 2025, and Plaintiff indicated he did not consent. *See id.* Defendants' counsel again notified Plaintiff of their intent on September 22, 2025, and Plaintiff responded, "Hi, again I have nothing to lose and no

2

attorneys fees will be rewarded and if I have to I will list your clients in Bankruptcy." *Id.* On September 25, 2025, counsel emailed Plaintiff to advise that Defendants intended to file a motion for attorneys' fees. *See id.* Defendants' counsel requested, pursuant to Local Rule 3.01(g), that Plaintiff confirm whether he consented to or opposed the request, noting that his failure to respond by noon the following day would be taken as opposition. *See id.* Plaintiff responded that he opposed the request and intended to file an appeal. *See id.*

On September 26, 2025, Defendants filed their motion for a determination that they are entitled to attorneys' fees and a declaration in support. ECF Nos. 155, 156. The Court denied Defendants' motion without prejudice, holding that Defendants' Local Rule 3.01(g) certification did not contain enough information. ECF No. 157. On September 27, 2025, Defendants re-filed their motion for attorneys' fees with an extended Local Rule 3.01(g) certification and declaration in support. ECF Nos. 158, 159. On February 12, 2026, Magistrate Judge Natalie Hirt issued a Report and Recommendation recommending that the Court grant Defendants' motion for attorneys' fees. ECF No. 164. On March 9, 2026, District Judge Mary S. Scriven adopted the report and directed Defendants to file this supplemental motion. ECF No. 165.[1]

---

[1] On March 16, 2026, Plaintiff filed a belated response to the Court's February 12, 2026 Report and Recommendation. ECF No. 166. Plaintiff makes no objection to the Report and

3

On April 21, 2026, Defendants' counsel emailed Plaintiff in an attempt to meet and confer about the instant supplemental motion on the amount of attorneys' fees. *See* Servodidio Decl. ¶ 2 & Ex. B (email Defendants' counsel sent Plaintiff on April 21, 2026 and Plaintiff's subsequent correspondence). Plaintiff responded in a series of nine separate emails that day, copying the Court, his attorneys in other cases, and the personal attorney for current U.S. Attorney General Kash Patel. *See id.* Among other things, Plaintiff called Defendants' counsel "CROOKS in suits" who would "ROT IN HELL," blamed Defendants for causing "death and destruction" and "support[ing] demonic devil music that spreads to our youth all over the radio," and threatened to file new lawsuits "in every FEDERAL COURT in America until 1 of them does the right thing." *Id.*

## LEGAL STANDARD

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*,

---

Recommendation on the merits, and Plaintiff is wrong that his appeal divests this Court of jurisdiction over Defendants' attorneys' fees motion. *See, e.g.*, *Rothenberg v. Sec. Mgmt. Co.*, 677 F.2d 64, 64 (11th Cir. 1982) (holding district courts have jurisdiction over attorneys' fees motions pending appeal). Moreover, even if it is true that Plaintiff did not, for some reason, receive Defendants' refiled motion for attorneys' fees (ECF Nos. 158 & 159), he did receive Defendants' substantively identical original motion and declaration (ECF Nos. 155 & 156), as indicated by the email he contemporaneously sent Defendants' counsel. *See* Ex. A (email Plaintiff sent on September 26, 2025 stating, "Take your attorneys fees and declarations and stick them up your LIBERAL asses!").

836 F.2d 1292, 1299 (11th Cir. 1999). "[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* However, "[t]he court . . . is itself an expert on the question [of reasonable rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303.

## ARGUMENT

Defendants seek to recover $294,900 for 474.60 hours billed by attorneys at Jenner & Block LLP ("Jenner"). *See* Servodidio Decl. ¶ 4. Jenner has a nationally recognized and award-winning Content, Media, and Entertainment practice group. *Id.* ¶ 6. Although the claims in this case were frivolous, Defendants had no choice but to take the claims seriously and vigorously defend against them both because of the amount sought by Plaintiff and because of the potential to create bad precedent for Defendants, which are music companies that own or control exclusive rights to the copyrights of many of the world's most popular sound recordings. *See* ECF No. 94 at 3. Defendants distribute their copyrighted recordings across the digital music ecosystem pursuant to agreements with online service providers like YouTube, *id.* at 3-4, and have the right to notify YouTube when individuals such as Plaintiff use those copyrighted recordings without authorization and without compensating Defendants and their recording artists. For that reason, when Plaintiff filed

this lawsuit contending that *Defendants* were the ones who violated the Copyright Act by protecting their rights, Defendants turned to the Jenner lawyers in this case, who have expertise in the DMCA claims under the Copyright Act and other legal issues involving the intersection of content and technology. *See* Servodidio Decl. ¶¶ 7, 8, 9, 10.

For lawyers of "comparable skills, experience, and reputation," Jenner's requested attorneys' fees are not only reasonable, but well below the market rate. The lead attorneys on this case are experienced copyright litigators with established reputations in the entertainment industry. *See id.* ¶¶ 7, 8. Nevertheless, the hourly rate in this case is a steep discount from their standard rates, more than 40% less than "rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299; *see* Servodidio Decl. ¶ 3. And this Court has recently seen evidence that "many partners at large firms in the District with comparable experience charge between $600 and $950 per hour for intellectual property litigation." *Glob. Glass Techs., Inc. v. Rsch. Frontiers, Inc.*, No. 8:20-CV-02517-MSS-AEP, 2025 WL 2088421, at *4 (M.D. Fla. July 25, 2025) (Scriven, J.) (sustaining in part defendants' objections to a report and recommendation reducing an attorneys' fees award).

The hours expended by Jenner were reasonable and necessary to successfully defend against baseless and disorganized claims from a vexatious *pro se* Plaintiff. Over two years, Jenner briefed two motions to dismiss, *see* ECF

6

Nos. 27 & 42, and one motion for summary judgment, *see* ECF No. 94. Although the case did not proceed to discovery, Jenner still needed to conduct factual investigations with each client to prepare the declarations and exhibits in support of the motion for summary judgment. *See* ECF Nos. 95, 96, 97, 98. Meanwhile, throughout the case, Plaintiff filed a spate of other bizarre and procedurally inapposite motions and made threats of tying up Defendants in endless litigation, *see, e.g.*, ECF Nos. 34, 52, 64, 91, 116, 119, 120, 123, 126, 130, 133, 134, 148; despite repeated reprimands from the Court, *see, e.g.*, ECF Nos. 71, 122, 124, 131, 149. Each time Plaintiff filed a motion or other notice or made a wild settlement demand, Jenner attorneys needed to review it, evaluate it, inform Defendants, and devise a strategy, even if the motion was ultimately dismissed *sua sponte*. This work took time and was solely of Plaintiff's making.

Finally, Defendants have already applied a significant discount to fees actually paid. First, Defendants have declined to seek fees for work done by attorneys and staff who are not counsel of record, worth $22,010.80. *See* Servodidio Decl. ¶ 11. Second, Defendants have cut 20% across-the-board from the fees charged to them to account for work done to refute Plaintiff's claim about the one video that was subject to a 2024 takedown notice. *See id.* That discount amounts to $73,725. *See id.* Altogether, Defendants seek 25% less

than they would otherwise be entitled, underscoring the reasonableness of the request.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant this Motion and award attorneys' fees in the amount of $294,900.

Dated: April 23, 2026                    Respectfully submitted,

/s/ *Gianni P. Servodidio*
JENNER & BLOCK LLP
Gianni P. Servodidio (Lead Counsel)
(N.Y. Bar No. 2619039)
*Pro Hac Vice*
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1620 Phone
GServodidio@jenner.com

Kara V. Brandeisky (D.C. Bar No. 90020421)
*Pro Hac Vice*
1099 New York Avenue, Suite 900
Washington, D.C. 20001
(202) 639-6000 Phone
KBrandeisky@jenner.com

*Attorneys for Defendants*

8

## Local Rule 3.01(g) Certification

Defendants' counsel certifies that Defendants' counsel conferred with pro se Plaintiff in a good faith effort to resolve the need to file a supplemental motion for attorneys' fees. On April 21, 2026 at 10:23 AM, Defendants' counsel advised Plaintiff, "Pursuant to the Court's order, Defendants intend to file a supplemental motion on the amount of the attorneys' fees. As noted in our initial motion, Defendants are seeking $294,900 for 474.60 hours of work done by four attorneys. Pursuant to Local Rules 3.01(g) and 7.01, please let me know if you dispute Defendants' entitlement to $294,900 in attorneys' fees, and if so, on what basis." Plaintiff responded at 10:29 AM, stating, "I DISPUTE this garbage and I will file more lawsuits against your clients, this is far from over, I will be filing lawsuits in every FEDERAL COURT in America until 1 of them does the right thing." Plaintiff called Defendants' counsel "CROOKS in suits" and who would "ROT IN HELL." Plaintiff sent additional emails to Defendants' counsel at 10:40 AM, 10:44 AM, 10:53 AM, 10:59 AM, 11:01 AM, 11:02 AM, 11:08 AM, and 4:04 PM, containing further threats and insults. *See* Ex. B.

/s/ *Kara V. Brandeisky*
Kara V. Brandeisky

9